BEJELIS v. UNITED STATES.

WALKER v. UNITED STATES.

Nos. 11691, 11692.

United States Court of Appeals
Sixth Circuit.

July 20, 1953.

---

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

These two appeals were heard together in this court but they will be considered separately. Each case involves a conviction for refusal to submit to induction into the armed forces of the United States in violation of the Selective Service Act of 1948. 50 U.S.C.App. Section 462(a), 50 U.S.C.A. Appendix, § 462(a). In each instance the jury was waived and the case was submitted to the court, which denied a motion for judgment of acquittal, adjudged the appellant guilty as charged in the indictment, and sentenced him to five years in prison.

### Bejelis v. U. S. A.—11691

Appellant Bejelis registered with the local draft board of Franklin County, Ohio, on September 13, 1948. In his selective service questionnaire he claimed to be a minister of religion, having been formally ordained a minister of Jehovah's Witnesses August 15, 1940. He also stated that by reason of religious training and belief he was conscientiously opposed to participation in war in any form. Appellant proved that he had been formally ordained and regularly served as a minister of religion. This evidence was supported by an affidavit executed by the Company Servant of the North Unit of Jehovah's Witnesses and by statements from other witnesses which were in no way controverted. On September 26, 1950 the local board placed appellant in Class 1-A-0 as a conscientious objector for limited service in the armed forces. On October 10, 1950, the same local board classified appellant as 4-E, and reclassified appellant as 1-A-0 on February 13, 1951. On March 13, 1951, appellant appeared before the local board for a personal hearing, which he claims was denied him.

He contends that the board failed to notify him of his classification following his appearance on March 13, 1951, and that this lack of notice prevented him from making a statement on appeal. The Minutes of Actions by the local board and appeal board show that on March 13, 1951, the appellant was given an oral hearing before the board

Victor F. Schmidt, Columbus, Ohio, for appellants.

Loren G. Windom, Asst. U. S. Atty., Columbus, Ohio (Ray J. O'Donnell, U. S. Atty. and Loren G. Windom, Asst. U. S. Atty., Columbus, Ohio, on the brief), for appellee.

and on that day he was personally advised by members of the board that he was entitled only to classification 1-A-0. On the same day the entry as to notice is "SSS Form 110 Mailed." We conclude that the notice was timely sent and was also personally given and that this contention has no merit.

The use of the secret report of the FBI agency by the hearing officer is also attacked as being a denial of due process.

That the statements in the secret file may have affected the result is evident, for the hearing officer, after making a digest in his report of the statements of various witnesses unnamed reported that appellant's "entire attitude is not regarded as evidencing good faith or sincerity." Appellant then was reclassified by the appeal board as 1-A. The use of the FBI report has been upheld, not only in Imboden v. United States, 6 Cir., 194 F.2d 508, certiorari denied 343 U.S. 957, 72 S.Ct. 1052, 96 L.Ed. 135, but also in United States v. Nugent, 346 U.S. 1, 73 S. Ct. 991, 97 L.Ed. ——. The Court of Appeals for the Second Circuit had decided in the Nugent case, 200 F.2d 46, that the use of the secret FBI file was prejudicial and violated the due process clause of the Constitution, but the Supreme Court reversed the judgment upon that specific point.

With reference to denial of fair hearing the appellant stands upon firmer ground.

After his classification as 1-A-0 appellant asked for a hearing because he contended that he should retain the classification as 4-E. He was notified to appear before the local board and his testimony concerning what happened follows:

"Well, I thought that I had given the Local Draft Board enough information [as] to why I should retain a minister's classification, or a conscientious objector's classification. But evidently they didn't think it enough information, so I decided to go there and talk to them orally and see if I could cover more information and present this information before them in order that they might set my classification as such. But, when I arrived there they

asked me a few minor questions such as where I lived."

\* \* \* \* \* \*

"Well, I was preparing to give this information before the Local Draft Board orally, but they cut me short by saying that this was needless because they were just going to transfer it on over to the Appeal Board, so I just thought, 'Well, there won't be no sense in' me going on,' and they just cut me short and I left."

Bejclis said that if he had been given the opportunity to relate his case he would have "used the Bible" and that, in addition to a statement of some ten minutes, if he had been permitted to speak before the local board he would have used possibly another ten minutes.

█ This testimony is not denied and the Government in its brief does not contend that the facts as to the hearing are not correctly stated by appellant. It therefore stands undisputed that the draft board said it was needless to give the statement because it was going to transfer the case to the appeal board. But the Regulations 1624.1 and 1624.2 specifically provide for a personal hearing and state that "At any such appearance, the registrant may discuss his classification, may point out the class or classes in which he thinks he should have been placed, and may direct attention to any information in his file which he believes the local board has overlooked or to which he believes it has not given sufficient weight. The registrant may present such further information as he believes will assist the local board in determining his proper classification." This provision is mandatory. Its violation by the local board constitutes a denial of due process of law. United States v. Stiles, 3 Cir., 169 F.2d 455; United States v. Zieber, 3 Cir., 161 F.2d 90. While the member or members of the local board may impose necessary limitations upon the time allotted to the registrant for this purpose (Regulations Section 1624.2(b)) they cannot cut him off from stating the substantial points which he desires to bring out before the board.

This court in Davis v. United States, 199 F.2d 689, has recently decided that the refusal of the local draft board to give the registrant the opportunity of discussing his classification, for the purpose of calling attention to his file information, and presenting further information deprives him of due process of law. We cannot differentiate the instant case from the Davis case.

The undisputed testimony of the registrant shows that it did not fully receive or consider what the appellant submitted. This conclusion requires that the judgment be and it hereby is reversed and the appellant discharged.

## Walker v. U. S. A.—11692

Appellant Walker registered on June 21, 1949, with the local board of Franklin County. On December 19, 1950, he was given the classification 4-E as a conscientious objector. This classification was reconsidered and on February 13, 1951, appellant was placed by the local board in classification 1-A-0 with limited service in the armed forces as a conscientious objector. After a personal interview with the local board he was retained in Class 1-A-0.

Appellant appealed his classification and on April 16, 1951, the appeal board determined that the appellant should not be classified in either Class 1-A-0 or Class 4-E and referred the case to the Department of Justice for investigation and recommendation under the Regulations. The board of appeals on August 20, 1951, by unanimous vote classified appellant as 1-A and upon his refusal to be inducted this indictment followed.

Motion for acquittal was made at the close of the case submitted by the Government. Appellant contends that judgment for acquittal should have been granted because (1) he was denied a full and fair hearing upon personal appearance after classification in 1-A-0 by being prevented from discussing the case with the local board; (2) the use of the secret report of the FBI violated procedural due process; and (3) that there was no basis in fact for

the denial of the claim of classification as a conscientious objector.

The contention as to the use of the FBI report has been discussed in the Bejelis case, No. 11,691. As there pointed out, this contention is eliminated by the decision of United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. ——.

As to the question whether appellant was denied a full and fair hearing, we conclude that the local board did not comply with the applicable Regulations. Appellant requested and received a personal interview with the local board which made the following entry with reference to his appearance:

"Our registrant James Clark Walker SS No. 33 41–31 2 33 appeared before our board this date and further stated his convictions and religious beliefs. This registrant seems to want the ·classification of 4-D. The board members told him he was not entitled to a 4-D classification and in their opinion to no other classification than 1-AO."

Appellant testified as follows with reference to the circumstances of the hearing:

"Well, at the time stipulated I went down to my Local Draft Board, and when I appeared before them I asked them why my classification had been changed from 4-E to 1-A-0 when the facts still remained the same. And, there two other points I was going to discuss with them. If there was any question at all in my papers as to the fact that I am a conscientious objector, I wanted to go over those papers with them and clear up anything that they might have found wrong with it, and I had new evidence to submit to them in case that there was any question at all in the case."

\* \* \* \* \* \*

"* * * after I asked them why my classification had been changed, they informed me that they were to go through the files and take out the ones that weren't sincere in their conscientious belief and separate them from the ones that were sincere in their

belief. And, they also informed me that they had no authority to put me in 4-E or 4-D if they saw fit, that the only thing they could do would be to send my case and my file to the Appeal Board, and that the next thing that I would hear would be from the Local Draft Board.

"That's all that happened."

"Q. And, then?

"A. Oh, I proceeded to testify as to my conscientious beliefs, and they said that would be useless to continue because they had no authority, and so I left."

Appellant further testified that he would have continued with the explanation of the Scriptures for five or ten minutes. He also said that he wanted to clear up "Why my classification had been changed" and to give "Additional information pertaining to why I am a conscientious objector." These statements are not denied.

■ The construction of its authority given by the local board was erroneous. It is not correct that the local board had no authority under the Regulations to re-classify the appellant, nor was it correct that the only thing the board could do would be to send the case and the file to the appeal board.

The Regulations particularly contemplate a reconsideration of the case by the local board in light of the discussion of his classification by the registrant and of any new evidence presented at the oral hearing. Regulations 1624.1 and 1624.2. The Regulations emphasize this fact when they authorize the registrant to direct attention to any information in his file which he believes the board has overlooked or to which it has not given sufficient weight. A further indication of the evident purpose of these particular sections is the provision that new information may be presented, such as the registrant "believes will assist the local board in determining his proper classification." These provisions would be meaningless if the local board had no authority to reclassify the registrant. Because of its erroneous conception that it was compelled immediately to send the

case and the file to the appeal board without consideration as to reclassification the local board deprived appellant of his rights under the Regulations. As held in the Bejelis case, these provisions are mandatory and their violation was a deprivation of due process. United States v. Stiles, 3 Cir., 169 F.2d 455; United States v. Zieber, 3 Cir., 161 F.2d 90; United States v. Laier, D.C., 52 F.Supp. 392; United States v. Peterson, D.C., 53 F.Supp. 760.

■ It is established that the steps required by the Regulations and the statute to be taken as a condition precedent to induction must be strictly followed, otherwise the order to report is void. Cf. Ver Mehren v. Sirmyer, 8 Cir., 36 F.2d 876. Since this point is dispositive of the case we do not consider the question whether there was any basis in fact for the classification of the appellant in 1-A.

The judgment of the District Court is reversed and the appellant is discharged.