**UNITED STATES v. GONZALES.**
**Cr. No. 33712.**

United States District Court
E. D. Michigan, S. D.
Sept. 22, 1953.

Fred W. Kaess, U. S. Atty., Ronald L. Greenberg, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Leithauser & Grossbart, Detroit, Mich., Hayden C. Covington, Brooklyn, N. Y., of counsel, for defendant.

KOSCINSKI, District Judge.

Defendant was tried by the court without a jury on a charge of violating Sec. 462(b), Title 50 U.S.C.A.Appendix, by failing to submit to induction into the armed forces. Throughout these proceedings he was represented by counsel. A waiver of trial by jury is on file.

Information in defendant's Selective Service file discloses that he registered with his local draft Board on January 4, 1950. In his Classification Questionnaire he indicated that he was a conscientious objector and also claimed exemption as a minister of Jehovah's Witnesses. Form SSS 150, the Special Form for Conscientious Objectors was furnished to him by the Board and was filled out and filed by defendant. The Local Board classified him III–A from which classification he appealed but the same class was assigned to him by the Appeal Board. Nine months later he was reclassified I–A, whereupon he requested and was granted a personal appearance before the Local Board, but this Board again classified him I–A and he again appealed. The Appeal Board reviewed his file and determined that he should not be classified in either a class lower than I–O (the class in which are placed conscientious objectors opposed to both combatant and non-combatant training and service) or in Class I–O and, as required by Regulations governing claims of conscientious objectors, the Selective Service file of this registrant was referred to the Department of Justice for an investigation and hearing before a hearing officer on the character and good faith of his con-

scientious objector claim and for an advisory recommendation. The Department of Justice, after the investigation and hearing, recommended to the Appeal Board that defendant's claims for exemption from both combatant and non-combatant service be not sustained. The Appeal Board, by a vote of 3–0, gave defendant a classification of I–A. He then requested the State Director of the Selective Service to withhold notice of induction until his file could be reviewed by that office but was informed that all procedural rights permitted under the law were granted to him and no further right of appeal existed, also that facts contained in the file afforded no basis for that headquarters to intercede in the normal processing of the case.

After a physical examination defendant was found acceptable for military service and a notice to appear for induction on February 19, 1953, was mailed to him. He appeared at the induction center but refused to submit to induction on the ground of religious training. This prosecution followed.

At the conclusion of the Government's case defendant moved for a judgment of acquittal. Decision on the motion was reserved.

■ One of the grounds for the motion is that the Government failed to prove a violation of the Selective Service Act and Regulations by defendant, as charged in the indictment. The duty to report for induction in accordance with the draft board's order includes the duty to submit to induction, and breach of such duty is a crime as defined by Sec. 462, Title 50 U.S.C.A.Appendix, making criminal a willful failure to perform any duty required of a registrant. See Estep v. U. S., 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567. In a prosecution for violation of an induction order proof by the Government that a defendant had been processed and ordered to report for induction, that he appeared for induction but refused to submit to induction, establishes the Government's case, putting the defendant to his defense. This showing was made by the Government and,

unless the defendant established a valid defense, he is guilty of the offense with which he is charged.

■ The duty to classify registrants under the Selective Service Act and to grant or deny exemptions rests solely upon the draft boards, local and appellate. Decisions of local boards are made final under the law. This means that Congress chose not to give administrative action under the Act the customary scope of judicial review which obtains under statutes and that the court does not weigh the evidence to determine whether the classification made by the local boards was justified. Their decisions are final, if made in conformity with the regulations, even though they may be erroneous. The question of jurisdiction of the local boards is reached only if there is no basis in fact for the classification which it gave registrant. Estep v. U. S., supra. Defendant charges, in his motion, that the classification he received was arbitrary and capricious and without basis in fact and that, in so classifying him, the local and appeal boards proceeded in violation of Regulations promulgated under the Selective Service Act.

Defendant was baptized as a Jehovah's Witness one and one-half months after his registration with the local draft board. Prior to his affiliation with this sect he was a Catholic, in which religion he was reared by his parents, together with his five sisters and a brother. His entire family still professes that faith. In September, 1948, defendant married a woman who had been a Jehovah's Witness for many years but he seemed to evince no interest in the sect after his marriage until just prior to or shortly after his registration. In SSS Form 150 he claims that he joined Jehovah's Witnesses in December, 1949. He was baptized in that religion on February 19, 1950, a month and half after his registration, and claims the status of a minister from that date. In his Special Conscientious Objector Form he gave the religion of both his parents as Catholic; he described his activity with the sect

since December, 1949, and his recognition as a pioneer in October, 1950, as the actions and behavior in his life which in his opinion most conspicuously demonstrate the consistency and depth of his religious convictions and, other than that, he answers that he has given no public expression, written or oral, to the views expressed in this special form as the basis of his claim for exemption. On the occasion of his personal appearance before the Local Board he testified that no ordination certificate was issued to him but that he had a Pioneer Assignment card and had some prescribed duties as a pioneer, being the advertising servant of the downtown unit, taking care of all the advertising duties; that they have some 2000 magazines which he takes care of each month, to see that they are distributed and if any more are needed; that his group meets every Thursday and sometimes "talks are handed to him" that he should make and at other times he conducts Bible studies with different people in various homes of members. From the time he first made claim for exemption he was employed on a full-time basis with the Great Lakes Steel Corporation which, according to his own admissions, manufactures some articles of war. He also testified before the Local Board that Jehovah's Witnesses had no creed or official statement directly relating to war but that this is a matter for each one to determine according to his own conscience; that there are some Jehovah's Witnesses who have joined the army and navy but did so according to the dictates of their own conscience.

In support of defendant's claims as a minister of Jehovah's Witnesses he submitted to the Local Board an affidavit, dated April 1, 1951, signed by a number of Jehovah's Witnesses, testifying to the fact that they observed him performing the duties of a minister for the past one and one-half years and that they recognized him as a minister, but, even if his own statement that he became a Jehovah's Witness in December, 1949, be accepted as true, he was not a Jehovah's Witness eighteen months prior to the date on which the affidavit was signed, April 1, 1951.

■ Under the facts disclosed by defendant's Selective Service file it is the considered opinion of this court that the classification of I–A assigned by the local and appellate boards to the defendant was not without basis in fact. Such decisions relative to his classification are, therefore, final unless such Boards, in reaching their decisions, proceeded in violation of the Act or Regulations.

■ A violation of the Regulations in several respects is charged. Defendant contends that on the occasion of his personal appearance before the Local Board its members made up their minds not to reconsider defendant's claims de novo but only heard him with the intention of giving him the same classification so that he could appeal; that he was not given a de novo classification, as required by Regulations; that the Board members were prejudiced and discriminated against him because of his membership in Jehovah's Witnesses; that the draft Board denied him his claim for classification as a conscientious objector because he had pressed his claim for exemption as a minister of religion before the Selective Service System. There is nothing in the evidence to substantiate these charges.

■ Another ground for acquittal contained in the motion is that the Local Board deprived defendant of procedural rights to a full and fair hearing before the Appeal Board by failing to make an adequate and full written memorandum of the new additional oral evidence given by defendant upon the occasion of his personal appearance, which new and additional oral evidence does not otherwise appear in the written papers sent to the Appeal Board. The facts reveal that on the occasion of the personal appearance before the Local Board notes were taken in longhand and also more complete notes for transcription later. At the conclusion of the hearing defendant requested a copy of the notes "so if the Board

asked a certain question I would know what I answered." Registrant was informed that the notes were for the Selective Service file and such notes were later transcribed and placed in the file. Subsequently, defendant requested and acknowledged in writing receipt of a copy of this transcript on February 2, 1953. At no time, since that date, did he complain that such transcript was inadequate, incomplete, or incorrect, until he testified at the trial that answers which he gave were not stated therein correctly. He gave only one instance, however, testifying that when he was asked about his employment with the Great Lakes Steel Corporation and the fact that they manufactured articles of war he answered that even if he raised hogs, which were sold to the market, and the Government bought them on the market, it was beyond his control and not his business to whom the hogs were sold and it was the same thing about his income tax. The transcript gave this portion of his testimony as, "I feel I have to make my living someway even if I raised pigs, and I am still doing the same thing when I pay my income tax. I do not know where the money goes but that is not my business. * * *" Defendant admitted, on cross-examination, that he never previously complained about the alleged incorrectness of the notes. Regulation 1624 requires only that any further information offered to the Local Board at the time of personal appearance before that Board shall be in writing, or, if oral, shall be *summarized* in writing and, in either event, shall be placed in the file of the registrant; the information furnished should be as concise as possible under the circumstances. This Regulation is not ambiguous and has been construed to require nothing more than a short written summary of the oral evidence received at the personal hearing. The transcript on file more than adequately summarizes the information submitted by defendant. See Niznik v. U. S., 6 Cir., 173 F.2d 328; Dickinson v. U. S., 9 Cir., 203 F.2d 336.

■ An additional ground for the motion of acquittal is the charge that use of the secret investigative report of the F.B.I. without notifying or confronting defendant with the substance thereof, the failure to include all the evidence contained in such report, and use of the hearing officer's report and reliance thereon by the Assistant to the Attorney General, without notifying or confronting defendant with the substance thereof, as well as failure to include the entire report of the hearing officer and the F.B.I. in the draft board file of defendant, all constitute a deprivation of defendant's rights to procedural due process of law, in violation of the Fifth Amendment of the U. S. Constitution and the Selective Service Act and Regulations. Counsel for defendant urges that defendant was deprived of his constitutional rights of confrontation by being refused the right to be made cognizant of those persons who may have testified against him. In U. S. v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417 it was held that a registrant is not permitted, under the Act and Regulations, to see the F.B.I. investigator's report nor to be informed of the names of persons interviewed by the investigator; that the requirement of Sec. 6(j) of the Act—that the Department of Justice afford registrant a hearing—does not require it to entertain an all-out collateral attack on the testimony obtained in the prehearing investigation; and, that the Act, as thus construed and applied, does not violate the Fifth Amendment. See also Bejelis v. U. S., 6 Cir., 206 F.2d 354; U. S. v. Dal Santo, 7 Cir., 205 F.2d 429. Regulation 1626.25, in effect at the time of hearing before the hearing officer, provides merely that the Appeal Board shall place in a registrant's file the letter containing the recommendation of the Department of Justice. The Appeal Board complied with this requirement. These grounds in the motion are not sustained.

■ In its advisory recommendation the Department of Justice incorporates

the conclusions reached by the hearing officer that defendant's affiliation with Jehovah's Witnesses has been too recent and to closely related to his draft status to warrant the acceptance of his conscientious objector position as genuine and the fact that he became a member one month after his registration in January, 1950, despite the fact that his wife had been a member for many years, lends weight to this conclusion. This recommendation gives rise to another ground in defendant's motion for acquittal as referring to artificial, fictitious and unlawful standards not authorized by the Act and Regulations and advises the Appeal Board to classify according to irrelevant and immaterial lines in determining that defendant was not a conscientious objector. The only purpose of Selective Service file referrals to the Department of Justice, in cases of conscientious objectors, as clearly set forth in the Regulations, is for an investigation and a hearing on the character and good faith of the conscientious objections of registrants. This is a special procedure, applicable only to claims of conscientious objectors. In such cases the boards are confronted with the difficult and complex decision in which the sincerity of another's religious convictions becomes the ultimate factual issue. Counsel for defendant cites a case in which another court held that all Jehovah's Witnesses are conscientious objectors. Defendant himself advances a contradictory view, since he stated on more than one occasion that this sect had no creed or official statement directly relating to war but left that matter to each one's conscience. The issue is not whether the registrant was a Jehovah's Witness at the time of his classification, nor whether he applied himself to his religious duties in that sect. It stems from defendant's claim that by reason of his religious training and convictions he is conscientiously opposed to participation in war in any form. This claim is initially set forth in SSS Form 150 and therein a registrant gives detailed information to aid in determining the sincerity of such claim. Regulation 1622.14 provides that in Class I-O, the classification which defendant seeks, in the alternative to his claim as a minister, shall be placed every registrant *who has been found* (not who claims), by reason of religious training and belief, to be conscientiously opposed to both combatant and non-combatant training and service in the armed forces. As was stated in the U. S. v. Nugent decision, supra, a registrant claiming this classification must convince the draft board, composed of representatives of his own community, of the *depth* and *sincerity* of his convictions; he must fill out forms, calculated to put him to the test; he must supply any additional detailed information which may be necessary for a *searching investigation* of such claim. Every factor which may have bearing on the claim may and should be considered, both by the boards and the hearing officer of the Department of Justice; from the mass of information on hand facts inconsistent with the claim made should be ferreted out and examined to determine whether the claim is a mere assertion utilized in an effort to circumvent Selective Service legislation or whether it is genuine and of the character which Congress had in mind when it gave express statutory recognition to the rights of conscience and adopted new and special procedures, under the present Selective Service Act, to secure those rights. See U. S. v. Nugent, supra. The hearing officer is not limited to mere inquiry as to a registrant's reputation for truth and veracity and, if he be found truthful, it is not mandatory that he accept as conclusive the registrant's claim that he is a conscientious objector if other data in the file casts doubt on the good faith in which the claim is made, or the purpose for which it was advanced. It is true, as claimed by counsel for defendant, that the registrant's actual status at the time of classification and not as of the time of registration controls, but it does not follow that information submitted at the time of registration may not be considered, particu-

larly in cases of conscientious objectors, when earlier data may supply clues as to the genuineness of the status claimed at the time of classification. The factors which the hearing officer considered were not irrelevant, viewed in this light. Furthermore, the advisory recommendation and information therein are not binding upon the Appeal Board; it could consider such recommendation but was not bound by it in any manner, and it was so advised by the Regulations; it had the complete Selective Service file before it at all times when this registrant's case was before it and had access to facts therein contained and had a right to make its own appraisal of those facts. This court finds that this phase of the proceedings under attack by defendant has not been conducted in violation of the Regulations.

In addition to grounds stated in the motion for acquittal counsel for defendant attacked the validity of the proceedings for other reasons, one of which is that at the personal hearing before the Local Board defendant's witness was not permitted to testify on defendant's behalf. Defendant appeared at this hearing with another Jehovah's Witness and was informed that the witness would be permitted to testify after defendant was examined. When such examination was completed the Board member asked defendant what he wished to present through his witness and defendant stated that the last time he was at the office of the Board he overlooked mentioning that this witness is the servant who is supposed to sign his Pioneer Assignment card, that he "showed the card to the witness and the witness OK'd it and took it to sign;" also, that the witness could verify statements made by defendant to the board. He was informed that it would not be necessary to verify this information as defendant was sworn and gave his statements under oath. Regulation 1624.1(b) provides that no person other than a registrant shall have the right to appear in person before the Local Board, but the Local Board may, in its discretion, permit any person to appear before it with or on behalf of a registrant. Under the circumstances above related the Local Board did not violate this Regulation nor did it abuse its discretion in rejecting testimony of this witness to verify statements made by defendant himself.

Charged as a deprivation of defendant's rights under the Statute and Regulations as Constitutional rights of due process of law is the fact that, although defendant claimed exemption before the Department of Justice Hearing Officer both as a conscientious objector and as a minister, there is no indication whatsoever that said Officer even entertained defendant's claim as a minister, in that the Appeal Board was therefore deprived of the benefit of the Hearing Officer's investigation relative to the claim as a minister. Regulation 1626.25 which directs referral of Selective Service files to the Department of Justice for investigation and a hearing before a hearing officer on the character and good faith of conscientious objections of registrants obviously has application only to cases of conscientious objectors and not those which involve other claims for exemption. A claim for exemption as a minister of the Gospel is beyond the scope of this Regulation.

Finally, counsel also contends that the statement in the hearing officer's report, incorporated in the advisory recommendation of the Department of Justice, distorts facts because it concludes that defendant became a member of Jehovah's Witnesses one month after his registration. Defendant claims he became a member in December, 1949, or prior to his registration on January 4, 1950. He was baptized in February, 1950. The hearing officer had a right to believe or disbelieve defendant's claims and reach his own conclusion, as a reasonable man, what the facts were in the light of all surrounding circumstances. If he concluded that defendant actually became a member of the sect the month during which he was baptized, which was the month following registration with the draft board, such

conclusion cannot be termed a distortion of facts as defendant claims they exist. This charge is not sustained.

An examination of the entire record of proceedings in this case before the Selective Service boards and the Department of Justice reveals that defendant has been accorded every opportunity sought by him to prove his claims for exemption as a minister of the Gospel and as a conscientious objector, and that all such proceedings were taken in full compliance with the Selective Service Act and Regulations promulgated thereunder. The order to appear for induction was a valid order, disobedience of which constitutes a violation by defendant of the Selective Service Act, as charged in the indictment.

Defendant's motion for judgment of acquittal is hereby denied.

This court finds defendant, Joe Valdez Gonzales, guilty of the offense charged in the indictment.