**UNITED STATES of America,**
**Plaintiff,**
v.
**Donald Oscar KRUEGER, Defendant.**
Crim. No. 286.

United States District Court
E. D. Wisconsin.
July 9, 1956.

Edward G. Minor, U. S. Atty., Howard W. Hilgendorf, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

J. N. Eisendrath, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

Defendant was indicted for violation of the Selective Service Act, 50 U.S.C.A. Appendix, § 451 et seq., for knowingly, wilfully and unlawfully failing and neglecting to perform the duties required of him under the Act. Jury was waived. The principal evidence consists of the draft board's file, the testimony of Mr. Scoon in explanation of the file, and the testimony of the defendant. Defendant claimed to be a conscientious objector as a member of Jehovah's Witnesses. He was first classified as II–C. In May 1952 he was classified as I–A. He appealed. The Appeal Board referred the matter to the Department of Justice and after its report sustained the classification of I–A. In July 1952 he was reclassified as II–C. March 18, 1953 the local board classified him as I–A. An appeal was taken to the appeal board and on June 15, 1953 the appeal board classified him as I–A. On that occasion the file was not referred to the Department of Justice. Defendant refused to report for induction and was subsequently indicted.

The early file and questionnaire showed that while applicant claimed to be a conscientious objector, he pushed very hard for deferment as a farm worker. The minutes of the board meeting held July 10, 1951 reporting on the interview with registrant and his brother at the time he was classified I–A indicates that the claim made was for deferment classification on account of farm work. This was apparently turned down because applicant was an owner and when the board inquired as to getting someone to take the farm over, registrant answered "that they could not afford to hire any extra help. They are trying to pay for the land they have purchased."

July 17, 1951. Paul Krueger, applicant's brother, asked for a personal appearance referring only to the registrant's need as a farm hand. Oscar Krueger, applicant's father, wrote a letter, received by the board July 19, 1951, and asked for a personal appearance, stating that the board was unjust in the classification. "It surely would be impossible for one man to work two big farms." He adds that he could give further reason against "this classification."

July 19, 1951. Applicant filed notice that he wanted to make a written appeal. In this seven-page communication, he discusses entirely the farm problem and farm classification and deferment.

July 26, 1951. The board received Special Form For Conscientious Objector. To this is attached what is entitled, "Affidavit" wherein fourteen persons who certified that they are Jehovah's Witnesses certify that they know registrant "to be a Bible student and is at present engaged in a study of the Bible." Then follows an eight-page comment which appears to be in registrant's handwriting. He quotes profusely from the Bible, discusses "the laws of Almighty God", states that his allegiance is to God, gives his source of his knowledge as the Bible and various publications of the Watchtower Society. He asserts that in 1940 he began to attend organized group studies of the Bible, using the Watchtower magazine as an outline; that he also attended Bible studies using other Watchtower publications. He states that he always relied upon the word of Almighty God, the Bible, of which he has made a thorough study "and the organized study groups of Jehovah's Witnesses."

On page 5 he further argues religion and the duties of a Christian. He again asserts that he has been "attending the organized studies of the Bible using the

Watchtower magazine as an outline"; that "he is also engaged in Bible study using other publications of the Watchtower Society"; that he has "spent about 15 hours a month studying the Bible" and attends many Bible lectures.

On page 6 he asserts that he has been attending the weekly Watchtower studies. He also states "I am one of Jehovah's Witnesses whose leader is Jehovah God and Christ Jesus", that the Watchtower Society is a legally organized corporation used to assist Jehovah's Witnesses to carry on their ministerial activities.

On page 7 he states that the Watchtower Society or Jehovah's Witnesses "does not maintain a membership roll" but "I have associated with them and studied with them since 1940." The studies, he claims, were in Shawano. He gives the name of the servant of Jehovah's Witnesses at Shawano, as Mr. Anton Frojlinski, Route 1, Bonduel, Wisconsin.

On page 8 he states, "Jehovah's Witnesses or the Watchtower Society have no official creed, but the Watchtower Society has published several articles which outline the scriptural position of Jehovah's Witnesses." He encloses a copy of the Watchtower magazine, dated February 1, 1951. He states, "I am attending the organized Watchtower Studies and a home Bible study to further prepare myself for the ministry of preaching the gospel as commanded by Christ Jesus."

In answer to the form questionnaire question, "Are you a member of a religious sect or organization?" he answers "yes", and refers to the previous attached papers for the name of the sect, when he joined and how often he attends.

August 1, 1951. The board notified registrant that his case was reviewed and a determination made not to reopen it.

Page 95 of the record is a paper entitled, "Affidavit" by Mr. and Mrs. Oscar Krueger, certifying that the registrant, their son, was brought up in the faith of Jehovah's Witnesses and has been active in that organization.

August 7, 1951. Registrant communicated with the board acknowledging their letter of August 1st, and asking "to bring" some facts to its attention that he felt had been overlooked. He points out that in his first questionnaire he signed the part concerning conscientious objectors. He then goes on to cite reasons why he "cannot" serve in the military service.

August 15, 1951. The board notified him that his letter of August 7 was considered and reviewed, that a determination was made not to reopen his case, but that the notice of appeal to the Appeal Board would be recognized.

October 8, 1951. The Appeal Board sent the record to the United States Attorney for advisory recommendation from the Department of Justice.

December 11, 1951. Registrant and Paul Krueger, his brother, write the board about the farms, that it would be impossible for one man to run them; that it is impossible to hire capable help and impossible to pay high wages for hired help. There is nothing in that communication referring to conscientious objections.

File, pages 69 to 74, is the report recommendation of the hearing officer, dated February 12, 1952, to the effect that registrant attended meetings of Jehovah's Witnesses on Sundays occasionally since 1940, although he claimed to attend them from 1948 when his family moved. He claimed to attend "some meetings" in Shawano since 1949 but does not go every week. He claimed to have attended ministry school in Shawano two or three times during 1951. He stated "about 20 people attend these services." The last time he attended the meeting was in December 1951. He pointed out that he claimed exemption as a farmer, that he claims to be a member of Jehovah's Witnesses, that the report of the FBI indicates that neighbors and associates regard him as of good moral character "who follows the teachings of Jehovah Witnesses." One of the

ministers of Jehovah's Witnesses advised that the registrant was considered to be a member of Jehovah's Witnesses, that the company servant reported he never heard registrant take part in public discussions, that the registrant expressed no outward sign that "he was inculcated with the fruits of the Bible if Jehovah wished." Another member of the sect said the registrant led a Christian life. Another member was not aware that registrant was a member of the sect. The father of the registrant stated that he and the mother were members but registrant had not been formally baptized. Father told the son not to serve in any branch of military service. "There seems to be some doubt whether the registrant is really a member of the Jehovah Witnesses." And "The registrant failed to convince the hearing officer that he was a member and believed in the teachings of Jehovah Witnesses."

The conclusion was that the registrant should not be classified as a conscientious objector and the classification of the Local Board of I–A be sustained. This was dated February 12, 1952.

The Department of Justice, on April 29, 1952 notified the Appeal Board that the conscientious objections of the registrant "are not sustained on the ground that he has failed to establish that such alleged objections are based upon deepseated conscientious convictions arising out of religious training and belief." The Department recommends that the registrant "be not classified as a conscientious objector."

The Appeal Board on September 1, 1951 classified registrant as I–A by a vote of 5 to 0.

June 3, 1952 registrant asked to have induction delayed or suspended or deferred so as to be able to take the matter up with General Hershey.

June 19, 1952, registrant asked the board for a copy of "new rules or information" concerning farm deferments.

Registrant's communication with the board, pages 61–64, received July 15, 1952. This communication consists of four pages longhand. It gives the history and description of the farm, the condition of health of his parents, encloses a doctor's certificate on the health of his father. This communication is not based upon conscientious objector status.

New forms were sent with reference to the farm deferment request.

In July 1952 the board reclassified registrant II–C.

March 18, 1953 he was reclassified I–A.

March 27, 1953 registrant writes the board: "I am making an appeal from classification of 1A on the grounds of conscientious objections." He then quotes copiously from the Bible or the Watchtower Society publications. On page 3 registrant states: "I have been active in preaching from house to house and on the street * .* *" "I have been calling back on those people who seem interested and conducting Bible Study * * *" He encloses "Publishers Record" which apparently lists the hours that he claims to have served in various capacities. He states, "In order to earn a living I am selfemployed on my own farm", and he purports to quote the Bible that "those that don't work shouldn't eat either." And adds, "In the event my appeal is denied I wish to personally appear before the board and make a appeal from classification."

March 27, 1953. Paul Krueger writes the local board requesting to appear personally on behalf of his brother, Donald, registrant. That letter refers both to farm work and conscientious objection.

March 27, 1953. Oscar Krueger requests the local board for personal appearance "in behalf of my son Donald Krueger." He mentions that he, Oscar, is an old man and couldn't carry on farming "And I have raised my boys in Christian manner * * * he is doing the will of our Lord."

April 22, 1953, the board communicated with the applicant to appear for further information in writing. The information furnished is much more purported quotations from the scriptures,

asked that the board consider his conscientious objections and his field service. Points out that he is conducting a bible study.

May 1, 1953. Registrant again notifies that he again wishes to appeal to the said Appeal Board. "I am one of Jehovah's Witnesses and I associate with the Shawano Wis. Co. of Jehovah's Witnesses. I am also enrolled in Theocratic Ministry School." He again quotes at length from the scripture and concludes, "I also wish to refer to my record of field service which is my file and also to my file for further information concerning my conscientious objections."

On May 7, 1953 by a vote of 5 to 0, the Appeal Board classified the registrant as I–A. There is no indication that on that appeal the matter was referred to the Department of Justice.

The government relies principally on Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305, for the proposition that in order to exhaust his administrative remedies so as to be able to challenge the legality of the classification, he must report to the induction station.

Defendant relies on subsequent decisions, among them Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, and Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132. Defendant further contends that there should have been a second reference to the Department of Justice on the second appeal. This the government takes issue with relying on the case of Davidson v. United States, 9 Cir., 218 F.2d 609, claiming that there was no showing of any change of status after the first reference to the Department of Justice on the first appeal and, therefore, none was necessary on the second appeal.

Under the earlier decisions the classification of the draft board is final and the Court would have no power or jurisdiction to review such classification. November 30, 1953 the United States Supreme Court decided the case of Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132. In that case the Court went further into the question as to how "final" the classification and order of the Selective Service authorities actually is. It stated, 346 U.S. at page 394, 74 S.Ct. at page 156,

"However, in Estep v. United States, 1946, 327 U.S. 114, at pages 122–123, 66 S.Ct. 423, at page 427, 90 L.Ed. 567, a case arising under the 1940 Act, this Court said: 'The provision making the decisions of the local boards "final" means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant.'"

and further stated, 346 U.S. at page 396, 74 S.Ct. at page 157,

"However, Dickinson's claims were not disputed by any evidence presented to the selective service authorities, nor was any cited by the Court of Appeals. The task of the courts in cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities. We have found none here.

"Local boards are not courts of law and are not bound by traditional rules of evidence; they are given great leeway in hearing and considering a variety of material as evidence. If the facts are disputed the board bears the ultimate responsibility for resolving the conflict—the courts will not interfere. Nor will the courts apply a test of

'substantial evidence.' However, the courts may properly insist that there be some proof that is incompatible with the registrant's proof of exemption. * * *"

and, 346 U.S. at page 397, 74 S.Ct. at page 158,

"But when the uncontroverted evidence supporting a registrant's claim places him prima facie within the statutory exemption, dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act and foreign to our concepts of justice."

The dissenting opinion indicates that the dissenting Justices interpreted the opinion of the majority of the court to mean just what it says. I quote from, 346 U.S. at page 399, 74 S.Ct. at page 159, of the dissenting opinion:

"The problem inherent in Estep and raised by the majority opinion today is, what is required of the board under such circumstances? It will not do for the Court as in Estep to say on the one hand that the board's action is not subject to 'the customary scope of judicial review' and that 'the courts are not to weigh the evidence', and then on the other to strike down a classification because no affirmative evidence supporting the board's conclusion appears in the record. Under today's decision, it is not sufficient that the board disbelieve the registrant. The board must find and record affirmative evidence that he has misrepresented his case—evidence which is then put to the test of substantiality by the courts. In short, the board must build a record."

No decision that the Court has been able to find since the Dickinson case modifies the holding of the majority of the Court as therein set forth, namely, that there must be some basis in fact for the classification given the registrant.

In the case of Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 415, 99 L.Ed. 467, there were things in the record which cast some doubt as to the registrant's claim to being a conscientious objector and as to whether that claim was asserted in good faith or whether it had been asserted too recently and too closely relating to his draft status to warrant acceptance of his conscientious objector position as genuine. The Supreme Court reversed the Court of Appeals, 6 Cir., 212 F.2d 71, and held that under the overall procedures designed to be " 'fair and just' ", the registrant was entitled to receive a copy of the Justice Department's recommendation and be given reasonable opportunity to file a reply thereto. Nothing in that decision modifies the holding in the Dickinson case.

█ The Court is of the opinion that, at least as of April 29, 1952, the record is such that the board could well believe there was some proof that is incompatible with the defendant's claim for conscientious objector status, and that this evidence and the record up to that date were such that it cannot be said that the refusal to grant conscientious objector classification at that time was based solely on suspicion and speculation.

The question then arises whether anything that occurred after that time changed the situation.

█ The registrant's letter of March 27, 1953 indicates that at that time he claims to be active in preaching from house to house and on the street. On May 1, 1953 registrant states, "I am one of Jehovah's Witnesses." There could have been a change in the situation between April 29, 1952 and May 1, 1953. When the matter was referred to the Appeal Board on May 7, 1953, the Appeal Board apparently did not refer the file to the Department of Justice for a second time. The law requires that on appeal from the refusal of conscientious objector status, the Appeal Board shall *refer* the matter to the Department of Justice. Failure to do so under the decisions results in failure to grant the registrant the rights to which he is absolutely entitled. The Department of

Justice, had it made an up-to-date investigation, might have found that the registrant's situation had changed. The Court believes that the registrant was entitled to such reference and to such advice. The file indicates that registrant claims that he was continuing his Bible study and had become a member of Jehovah's Witnesses. For that reason the Court does not feel that the case of Davidson v. United States, 9 Cir., 218 F.2d 609 is controlling.

Feeling that the defendant was denied a right to which he is entitled, namely, a second review by the Department of Justice, in view of the lapse of time and circumstances, and its advice and recommendation, it is the opinion of the Court that the defendant has been denied this right and therefore, and for that reason, it is the verdict and judgment of the Court that the defendant is not guilty.