## GONZALES *v.* UNITED STATES.

No. 69.   Argued February 1–2, 1955.—Decided March 14, 1955.

*Hayden C. Covington* argued the cause and filed a brief for petitioner.

*John F. Davis* argued the cause for the United States. With him on the brief were *Solicitor General Sobeloff, Assistant Attorney General Olney, Beatrice Rosenberg* and *Carl H. Imlay.*

MR. JUSTICE CLARK delivered the opinion of the Court.

This is another prosecution under 62 Stat. 622, 50 U. S. C. App. § 462 (a), for refusal to submit to induction into the armed services. The only question necessary to the decision of this case is whether petitioner, claiming exemption because of conscientious objections to participation in war, was entitled to receive a copy of the recommendation made by the Department of Justice to the Appeal Board under the provisions of § 6 (j) of the Universal Military Training and Service Act, 62 Stat. 612, as amended, 50 U. S. C. App. § 456 (j). The trial judge held that he was not, and that the classification of petitioner as I–A was valid. Petitioner was found guilty as charged, 120 F. Supp. 730, and the Court of Appeals for the Sixth Circuit affirmed, 212 F. 2d 71.

Petitioner registered under the selective service laws on January 4, 1950. In his classification questionnaire, filed on March 9, 1951, he claimed exemption as a minister and conscientious objector, his claims stemming from his association with the Jehovah's Witnesses. Under the doctrines of this sect, each member is a minister; and their tenets are widely interpreted as banning personal participation in political wars. See *Sicurella* v. *United States, ante,* p. 385. Only petitioner's conscientious objector claim is now before the Court.

Petitioner's secular education consisted of elementary school training and two years of high school. On September 27, 1948, he married a member of the Jehovah's Witnesses. The record indicates that, beginning in November 1949, he received "private instruction" in the

Bible from a member of the sect, and that in December he began "actively serving" as a Jehovah's Witness. On January 4, 1950, petitioner registered under the selective service laws. The following month he was ordained as a minister of the Witnesses. Petitioner's religious affiliation, at least as late as 1948, had been Catholic, and his parents and family were Catholic. He began work with the Great Lakes Steel Corporation, a steel plant manufacturing articles of war, on August 19, 1950. On October 1, 1950, petitioner was recognized as a "pioneer" by the Jehovah's Witnesses and embarked on more extensive religious activities.[1]

In his special form for conscientious objectors, filed on April 3, 1951, petitioner claimed exemption from combatant. and noncombatant service. He relied on "the ten commandments of God found in the Bible" to support his claim. He said he would use force "[i]n protection of person and ministerial activities, but at no time in aggression." Petitioner declined to rely on the official pronouncements of the Jehovah's Witnesses to support his position, stating that "I am basing myself entirely on my knowledge of the Bible." He supported his claims, however, with an affidavit signed by 22 persons, attesting to petitioner's activity in the Witnesses for the 18 months preceding April 8, 1951, and with a certificate of 4 persons stating that petitioner was conducting weekly Bible studies with them. Petitioner had not given public expression to his views "other than" through his general religious activity.

After an intervening classification of III–A (dependency deferment), petitioner was classified I–A on January

---

[1] A much more extensive narration of petitioner's background is given in the hearing officer's report. (R. 11a *et seq.*) The latter document, under applicable regulations, 32 CFR (1954 Supp.) § 1626.25, was not transmitted to the Appeal Board for its consideration in classifying petitioner.

8, 1952. On February 19, 1952, following a personal appearance, the local Board decided unanimously to continue petitioner in I–A, and petitioner noted an appeal. The Appeal Board made a tentative finding against him and referred the case to the Department of Justice. The FBI then made its investigation and petitioner was given a hearing. The hearing officer, while noting that petitioner "appeared to be a sincere Jehovah's Witness and as such is conscientiously opposed to war," recommended denial of the conscientious objector classification. The Department of Justice, in its report to the Appeal Board, made a similar recommendation. In accepting the view expressed by the hearing officer, the Department found support in "[t]he fact that registrant became a member of the Jehovah's Witness sect one month after his Selective Service System registration in January, 1950, despite the fact that his wife had been a member for many years." [2] No copy of this report or other notice of the recommendation was given petitioner prior to the Appeal

---

[2] The complete text of the report is as follows:

"Registrant was born July 22, 1931, in San Antonio, Texas. He left the Edison High School of that city in June, 1948, after two years of attendance and took employment as a sheet metal worker with a local firm. He married his present wife in September, 1948. In the summer of 1949 he came to Detroit and worked as a laborer for the Adams Lumber Company until July, 1950. From August, 1950 to present he has been employed as a laborer and general maintenance man at the Great Lakes Steel Corporation. Registrant previously was a Catholic and has five sisters and a brother all of whom are Catholics. His parents were Catholics. His mother is dead and his father lives in San Antonio, Texas. Registrant's wife became a Jehovah's Witness in 1941 and registrant was baptized a member in February, 1950. In October, 1950, he became a 'pioneer' and he participates in the usual activities of his sect, attending several weekly meetings including the Theocratic Ministry School. He also does house to house work and sells the publications of the sect. Registrant bases his claim for exemption upon his own personal interpretation of the Bible with the guidance of the Watchtower Bible aids and relies

Board's decision. On December 11, 1952, the Appeal Board unanimously classified petitioner I–A, and upon his refusal to submit to induction this prosecution was brought.

Petitioner contends that his classification is invalid because he was not furnished a copy of the Justice Department's recommendation to the Appeal Board and accorded an opportunity to reply thereto. Section 6 (j) of the Universal Military Training and Service Act, outlining the procedure in conscientious objector cases, is silent on this question.[3] But a similar silence was not held to be

particularly on the Ten Commandments. He believes in the use of force in self defense.

"The investigation reflects that registrant is well regarded in the several communities in which he has lived and that he and his wife are said to be very religious. Neighbors advise that they hold Bible studies in their apartment and appear to devote considerable time to religious work. References and co-religionists state that he is a devoted member of the sect and applies himself earnestly to his religious work. Employment records reveal that registrant was remembered as a good worker and that his record is good and contains no derogatory information.

"After a personal appearance, the Hearing Officer stated that registrant appeared to be a sincere Jehovah's Witness but concluded that his affiliation with that sect has been too recent and too closely related to his draft status to warrant the acceptance of his conscientious objector position as genuine. The fact that registrant became a member of the Jehovah's Witness sect one month after his Selective Service System registration in January, 1950, despite the fact that his wife had been a member for many years, lends weight to this conclusion.

"After consideration of the entire file and record, the Department of Justice finds that the registrant's objections to combatant and noncombatant service are not sustained. It is, therefore, recommended to your Board that registrant's claim for exemption from both combatant and noncombatant training and service be not sustained."

[3] This section does provide that the Department of Justice shall make an "appropriate inquiry," and hold a "hearing" with respect to the claimed conscientious objections. If after such hearing it

a considered rejection of the right of a registrant to be supplied with a fair résumé of adverse evidence in the FBI reports, *United States* v. *Nugent,* 346 U. S. 1 (1953); *Simmons* v. *United States, ante,* p. 397, and we believe it also to be implicit in the Act and Regulations—viewed against our underlying concepts of procedural regularity and basic fair play—that a copy of the recommendation of the Department be furnished the registrant at the time it is forwarded to the Appeal Board, and that he be afforded an opportunity to reply.[4]

It is true that the recommendation of the Department is advisory. 50 U. S. C. App. § 456 (j). Indeed, this very consideration led us in *United States* v. *Nugent, supra,* to allow considerable latitude in the auxiliary hearing which culminated in the Department's report. A natural corollary of this, however, is that a registrant be given an opportunity to rebut this recommendation when it comes to the Appeal Board, the agency with the ultimate responsibility for classification. For in the usual case it is the Appeal Board which renders the selective service determination considered "final" in the courts, not

---

finds the claims unfounded, "it shall recommend to the appeal board that such objections be not sustained." The regulations are of the same tenor, 32 CFR (1954 Supp.) § 1626.25.

[4] Inapplicable to the instant question are cases dealing with whether a recommendation or intermediate report is necessary to begin with, *Labor Board* v. *Mackay Co.,* 304 U. S. 333; *Public Service Corp.* v. *S. E. C.,* 129 F. 2d 899 (C. A. 3d Cir. 1942), whether the recommendation can be subjected to judicial review, *Chicago & Southern Air Lines* v. *Waterman Corp.,* 333 U. S. 103, and whether satisfactory procedures were employed in formulating the recommendation, *Williams* v. *New York,* 337 U. S. 241; *Norwegian Nitrogen Co.* v. *United States,* 288 U. S. 294. The latter three cases are distinguishable, moreover, because they do not involve individualized fact finding and classification, but legislative determinations, political judgments, and the exercise of judicial discretion in the imposition of sentence. See also *Mazza* v. *Cavicchia,* 15 N. J. 498, 105 A. 2d 545 (1954).

to be overturned unless there is no basis in fact. *Estep* v. *United States,* 327 U. S. 114.

It should be emphasized, moreover, that in contrast to the strictly appellate functions it exercises in other cases, the Appeal Board in handling conscientious objector claims is the first selective service board to receive the Department's recommendation, and is usually the only decision-making body to pass on the entire file. An opportunity for the registrant to reply is therefore the only means of insuring that this Board will have *all* of the relevant data. Furthermore, if the registrant is to present his case effectively to the Appeal Board, he must be cognizant of all the facts before the Board as well as the over-all position of the Department of Justice. See *Ohio Bell Telephone Co.* v. *Public Utilities Comm'n,* 301 U. S. 292, 300–305; *United States* v. *Abilene & So. Ry. Co.,* 265 U. S. 274, 289; *Interstate Commerce Comm'n* v. *Louisville & N. R. Co.,* 227 U. S. 88, 93.

The facts here underscore this necessity. The Department in its recommendation emphasizes that the petitioner was of a Catholic family and concluded that petitioner's "affiliation with [Jehovah's Witnesses] has been too recent and too closely related to his draft status to warrant the acceptance of his conscientious objector position as genuine. The fact that registrant became a member of the Jehovah's Witness sect one month after his . . . registration . . . lends weight to this conclusion." But petitioner contends he was a member of the Witnesses *before* he registered, and there is testimony that he had not been of the Catholic belief since 1948. Nor was this facet of the case explored at the Department of Justice hearing. If petitioner had been afforded a copy of the recommendation, he might have successfully contradicted the basis of the Department's conclusion or diminished the forcefulness of its thrust. The record also discloses that the local Board apparently placed little

emphasis on the lateness of petitioner's conversion, inquiring instead about the tenets of the sect and petitioner's employment in the steel plant. On appeal, it was logical for petitioner to direct his attention to these matters. But the Department of Justice based its rejection of his claim on the proximity of petitioner's conversion to his registration for the draft, a contention of which he had no knowledge and no opportunity to meet. The petitioner was entitled to know the thrust of the Department's recommendation so he could muster his facts and arguments to meet its contentions. See *Morgan* v. *United States*, 304 U. S. 1, 18.[5]

Nor is this requirement inconsistent with the views expressed in *United States* v. *Nugent, supra,* that selective service procedures, "geared to meet the imperative needs of mobilization and national vigilance," are not to be delayed by "litigious interruption." The registrant in that case sought to make the auxiliary procedure of the Department of Justice "a full-scale trial for each appealing registrant." We refused to compel "an all-out collateral attack at the [Department of Justice] hearing on the testimony obtained in its prehearing investigation." Here all that is involved is the mailing of a copy of the Department's recommendation to the registrant and permitting a reply to the Appeal Board. The registrant already has the right to file a statement with the

---

[5] "The right to a hearing embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them. The right to submit argument implies that opportunity; otherwise the right may be but a barren one. Those who are brought into contest with the Government in a quasi-judicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the Government proposes and to be heard upon its proposals before it issues its final command."

Appeal Board.[6]   Just as the right to a hearing means the right to a meaningful hearing, *United States* v. *Nugent, supra; Simmons* v. *United States, supra,* so the right to file a statement before the Appeal Board includes the right to file a meaningful statement, one based on all the facts in the file and made with awareness of the recommendations and arguments to be countered.

A similar problem has arisen once before in the administration of our selective service laws.   Under the Selective Training and Service Act of 1940, local Boards referred to panels of clergymen and laymen of a particular faith questions concerning the validity of ministerial and divinity student claims.   The panel interviewed the registrant and made a report to the local Board.   In sustaining the use of these panels, this Court emphasized the right of the registrant under the regulations to

---

[6] See 32 CFR § 1626.12.   "The person appealing may attach to his appeal a statement specifying the matters in which he believes the local board erred, may direct attention to any information in the registrant's file which he believes the local board has failed to consider or to give sufficient weight, and may set out in full any information which was offered to the local board and which the local board failed or refused to include in the registrant's file."   It is true that this section requires that the statement be made at the time the appeal is initiated.   And 32 CFR § 1626.24 (b) provides that "the appeal board shall not receive or consider any information which is not contained in the record received from the local board except (1) the advisory recommendation from the Department of Justice under § 1626.25, and (2) general information concerning economic, industrial, and social conditions."   But the broad scope of review provided in § 1626.12 is inconsistent with any implication that registrants in conscientious objector cases are required to file their statements with the initial appeal.   Such a requirement, if indeed the section is viewed as an absolute bar to supplemental and amendatory statements, may be proper in the normal case.   But where the record is augmented on appeal, the registrant can effectively point out error and failure to consider only after the Department of Justice has acted.

examine the report and "explain or correct it, or deny it." *Eagles* v. *Samuels,* 329 U. S. 304, 313. See also *Eagles* v. *Horowitz,* 329 U. S. 317, 323. And, in a case where it was not shown that the registrant had access to the panel's report, Judge Learned Hand said:

> "As the case comes to us, the board made use of evidence of which [the registrant] may have been unaware, and which he had no chance to answer: a prime requirement of any fair hearing." *United States* v. *Balogh,* 157 F. 2d 939, 943, judgment vacated on other grounds, 329 U. S. 692.

See also *Brewer* v. *United States,* 211 F. 2d 864 (C. A. 4th Cir. 1954).

So basic, indeed, is this "prime requirement of any fair hearing" that counsel for the Government contended for the first time in oral argument that the rights of the registrant were amply protected by the provision in the regulations for a mode of "rehearing." In short, the argument is that after the Appeal Board decides against the registrant and his file is returned to the local Board, he has the right under the selective service regulations to examine all information in his file, including the recommendation of the Department, 32 CFR § 1606.32 (a) (1); 32 CFR § 1606.38 (c). The registrant would then have a right to request a reopening of his classification, 32 CFR § 1625.1 (a); 32 CFR § 1625.2, if he submitted "proof of error in documents submitted to the appeal board by the Department of Justice." [7] Moreover, he may present his contentions to the Director of Selective Service or the State Director of Selective Service, requesting a reopening of his classification or a reconsideration by the Appeal Board, 32 CFR § 1625.3 (a); 32 CFR § 1626.61 (a).

---

[7] See letter of General Hershey, February 4, 1955.

We believe these remedies to be too little and too late. Too little, because the right to present petitioner's side of the case is broader than the bare right to correct "errors" made by the Department in its recommendation. Too late, because, except with the permission of the national or state Director, only the local Board may reopen the case; and a certain reluctance is to be expected after the Appeal Board, albeit on incomplete presentation, has rejected the registrant's claim. Moreover, the local Board has discretion to refuse to reopen the case if it "is of the opinion that the information accompanying such request fails to present any facts in addition to those considered when the registrant was classified or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification . . . ." 32 CFR § 1625.4.

We hold that the over-all procedures set up in the statute and regulations, designed to be "fair and just" in their operation, 62 Stat. 605, 50 U. S. C. App. § 451 (c), require that the registrant receive a copy of the Justice Department's recommendation and be given a reasonable opportunity to file a reply thereto. Accordingly, the decision of the Court of Appeals, upholding petitioner's conviction for refusing to submit to induction, is

*Reversed.*

Mr. Justice Reed, with whom Mr. Justice Burton joins, dissenting.

I would affirm. The prescribed procedure, including especially the hearing before a hearing officer, provided adequate protection for petitioner, and I find no express or implied statutory or administrative requirement that the Department of Justice send to petitioner a copy of its advisory report to the Appeal Board.

The report of the Department of Justice is advisory only. As the registrant has, under Selective Service

Regulations, 32 CFR § 1606.32 (a)(1), a right to examine the report, as well as all other information in the file, and under § 1625 (1) and (2) reopen the classification on a showing of error, the "fair and just" requirement for a hearing is satisfied. *United States* v. *Nugent,* 346 U. S. 1.

MR. JUSTICE MINTON, dissenting.

Because the regulations of the Board did not require the Department of Justice to send petitioner a copy of its advisory report, and since the petitioner did not request that he be allowed to see the report or a summary thereof, the action of the Board was not arbitrary and capricious. The Board did not lose its jurisdiction or act beyond it. I would affirm.