**Harold L. CROTTY, Plaintiff, Appellant,**

v.

**Lawrence R. KELLY, Commanding Officer, et al., Defendants, Appellees.**

**No. 71–1045.**

United States Court of Appeals,
First Circuit.

June 4, 1971.

Robert P. Shea, Dover, N. H., with whom Burns, Bryant, Hinchey, Nadeau & Cox, Dover, N. H., was on brief, for plaintiff, appellant.

William B. Cullimore, Asst. U. S. Atty., with whom David A. Brock, U. S. Atty., was on brief, for defendants, appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

On May 14, 1970, petitioner, a member of the New Hampshire Army National Guard, was ordered to active duty, pursuant to Army Regulation 135–91 § 12. Petitioner sought to avoid serving on active duty by appealing this order, by claiming medical incapacity, and by claiming conscientious objector status. The Army denied these claims and ordered petitioner to report for active duty on December 19, 1970. He petitioned the district court for a writ of habeas corpus, alleging numerous errors. The district court denied the writ, and petitioner appeals to us.

█ We turn first to the petitioner's attack on the original order calling him to active duty. First, he claims that the district court should have reviewed the National Guard's decision to order him to active duty. There is no merit to this claim. Courts will not review purely discretionary decisions by military officials which are within the officials' valid jurisdiction; our review is limited to insisting that the procedure by which such decisions are reached complies with due process. *See* Smith v. Resor, 406 F.2d 141, 145 (2d Cir.1969).

█ Thus, we can consider petitioner's further claim that the procedure by which he appealed the call-up failed to comply with due process. Army Regulation 135–91, which governs appeals of orders to active duty, provides for only a written appeal to a board of officers in a geographically distant place. When he appealed to this board, petitioner was denied access to the complete National Guard file, particularly the report of the officer who investigated the call-up decision. If this was error, *see* our discussion of petitioner's application for conscientious objector status *infra*, it was, as we indicated in our denial of petitioner's motion for a stay pending appeal, harmless. Petitioner did have access to most of the National Guard file and did

know the reasons for his call-up, yet he made no effort to respond to these reasons. Had he made an effort to refute the charges against him, he might have been prejudiced if the investigative report was not available to him, but not having taken that initial effort, petitioner has no grounds to complain.

█ We also reject petitioner's claim that due process entitles him to a hearing before the review board on his appeal of his call-up order. Petitioner's constitutional rights can be protected by a written appeal without a hearing. Ansted v. Resor, 437 F.2d 1020 (7th Cir.1971); *cf.* Drown v. Portsmouth School District, 435 F.2d 1182 (1st Cir. 1970), cert. denied, 402 U.S. 972, 91 S. Ct. 1659, 29 L.Ed.2d 137 (1971).

Petitioner's second area of attack is on the denial of his conscientious objector application. He argues that the procedure for deciding his application violated due process, that there was no basis in fact for the denial of his claim, and that an erroneous standard of conscientious objection was applied. We consider first the procedural argument.

The procedure for processing applications for release from active service on conscientious objector grounds is governed by Department of Defense Directive No. 1300.6 (1968) and Army Regulation 135–25 (1970). Under this procedure, the appellant submits detailed information and supporting documentary evidence with his application. He is then interviewed by a medical officer (preferably a psychiatrist), by a chaplain who comments on the sincerity of his beliefs, and by a hearing officer who makes a recommendation of approval or disapproval of the application. The reports of the three interviews are forwarded along with the information supplied by the applicant to the applicant's commanding officer, who may also make a recommendation for approval or disapproval of the application. He then forwards the file to department headquarters at Fort Harrison, Indiana, where a board of officers, called the Conscientious Objector Review Board, makes the

final determination whether to grant or deny the application.

█ Petitioner's application was processed according to these procedures. He was interviewed by a psychiatrist, a chaplain, and a hearing officer. His commanding officer also made a recommendation. The Conscientious Objector Review Board at Fort Harrison relied on the chaplain's and hearing officer's reports and on the commanding officer's unfavorable recommendation in denying petitioner's claim. Petitioner, however, was denied access to these documents until this litigation occurred. He was therefore unable to respond to the negative recommendation and reports. This procedure which denied him access and a chance to respond to the reports, he asserts, violated due process.

The case of Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955), concerned a registrant who had sought a conscientious objector exemption from his local draft board. After his local board denied his claim, the registrant appealed to an Appeal Board. Under the procedure then applicable, the Appeal Board consulted the Department of Justice which carried out an investigation and recommended denial of the conscientious objector classification. The Appeal Board accepted this recommendation and denied the request without allowing the registrant to see a copy of the recommendation. Although the regulations were silent on the registrant's right of access to such reports, the Supreme Court ruled that it was "implicit in the Act and Regulations— viewed against our underlying concepts of procedural regularity and basic fair play—that a copy of the recommendation of the Department be furnished the registrant at the time it is forwarded to the Appeal Board, and that he be afford-

ed an opportunity to reply." 348 U.S. at 412, 75 S.Ct. at 412.

The Court so ruled because the registrant would have no other opportunity to rebut the recommendation; the decision of the Appeal Board was not to be overturned unless there were no basis in fact. Moreover, the Appeal Board was the first board to receive the Department's recommendation and was, in most cases, the only decision-making body to pass on the entire file. It was important that it have all of the relevant data, including the registrant's response to the findings of the Department. Finally, the registrant could not effectively present his own case if he did not know all the facts before the Board including the position of the Department of Justice. Apparently, the Department relied on the proximity of the registrant's conversion to his receiving a I-A classification as an indication that he was insincere, a position which the Court believed the registrant might have been able to refute.

We find much of this analysis applicable to petitioner's application. The Conscientious Objector Review Board is the final decision-maker under Department of Defense Directive No. 1300.6 (VI) (E),[1] and its decision will not be overturned by a court unless there exists no basis in fact which supports it. *Cf.* Bates v. Commander, First Coast Guard District, 413 F.2d 475, 478 (1st Cir. 1969). Like the Appeal Board in *Gonzales,* the Board was the only decision-making body to pass on the entire file. It was therefore important that it have access to all available information, including petitioner's responses to the unfavorable reports and recommendation. Finally, as in *Gonzales,* petitioner could not effectively present his position to the Board without knowing the con-

---

1. The Army procedure is more final than the Appeal Board procedure in *Gonzales.* There, at least, there was some provision for "rehearing" because the registrant could examine his file, including the Department's recommendation, after the Board's disapproval and could seek a re-

opening if he found erroneous information. No similar provision exists in the military procedures, but the Court found even the *Gonzales* procedures "to be too little and too late". 348 U.S. at 417, 75 S.Ct. at 414.

tents of the reports and recommendation. The proximity of petitioner's conscientious objector claim to his being called to active duty was a factor cited by petitioner's commanding officer as a basis for not approving petitioner's application. This specific reason, similar to the one in *Gonzales*, might have been explained away had petitioner been afforded the opportunity. We conclude that this case is controlled by *Gonzales* and that persons in petitioner's position have a right to a copy of all documents which are forwarded to the Conscientious Objector Review Board, at the time they are forwarded, and the right to an opportunity to reply.

The Supreme Court in *Gonzales* was, of course, interpreting a different set of regulations than those before us, but the reasoning of that opinion is nonetheless applicable here.[2] The reasoning of that opinion was not based upon the intricacies of the particular regulations under scrutiny but was based upon "underlying concepts of procedural regularity and basic fair play." 348 U.S. at 412, 75 S.Ct. at 412. We interpret this language to mean that due process requires the result the Court reached in *Gonzales* and which we reach in this case.

Nor does it matter that we are concerned here with denial of conscientious objector status to those already in the military whereas *Gonzales* concerned denial of conscientious objector status to draft registrants. In a recent opinion, Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), the Supreme Court relied on the assurance of the government that late-crystallizing conscientious objector claims could be presented after induction and rejected an argument that local boards should hear such claims. In so holding, the Court warned "[t]hat those whose views are late in crystallizing can be required to wait, however, does not mean they can be deprived of a full and fair opportunity to present the merits of their conscientious objector claims for consideration under the same substantive criteria that must guide the Selective Service System." 39 U.S.L.W. at 4455. We draw from this language the implication that at the very least such an opportunity must embrace the rights to know the case against one and to attempt to meet it via the written word. These, it seems to us, post-*Ehlert*, are the minimal rights guaranteed by due process. Applying *Ehlert* in conjunction with *Gonzales*, therefore, we conclude that failure to afford petitioner access and a chance to respond to all reports and recommendations concerning his conscientious objector claim was a denial of due process.

We find it unnecessary to consider petitioner's claims that there was no basis in fact for denial of his conscientious objector application and that the Conscientious Objector Review Board applied an erroneous standard in reviewing his application.

We reverse and remand to the district court with direction to issue the writ at the expiration of 30 days unless petitioner is, in the interim, afforded the opportunity to resubmit to the Conscientious Objector Review Board his conscientious objector application, having an opportunity to read and respond to all relevant documents.

---

2. Other circuits have continued to apply *Gonzales* despite the existence of a different set of Selective Service Regulations from those the Court interpreted. *E. g.*, United States v. Thompson, 431 F.2d 1265 (3d Cir. 1970); United States v. Cabbage, 430 F.2d 1037 (6th Cir. 1970); United States v. Cummins, 425 F.2d 646 (8th Cir. 1970); United States v. Owen, 415 F.2d 383 (8th Cir. 1969); United States v. Purvis, 403 F.2d 555 (2d Cir. 1968).