**Dominic R. VIOLI, Plaintiff,**

v.

**Captain Walter H. REESE, Commanding Officer, Naval Air Facility, Warminster, Pennsylvania, et al., Respondents.**

**Civ. No. 71–1652.**

United States District Court,
E. D. Pennsylvania.

May 31, 1972.

C. Oliver Burt, Asst. U. S. Atty., for the Government.

G. Sander Davis, Philadelphia, Pa., for respondents.

OPINION AND ORDER

HIGGINBOTHAM, District Judge.

I

Introduction

The jurisdiction of this Court is predicated upon Title 28, United States Code, Section 2241, as amended, (1968). Petitioner, a seaman on active duty in the United States Navy, has alleged that the procedure employed by the Navy in processing his in-service request for discharge as a conscientious objector was violative of his Fifth Amendment right of due process of law. Petitioner also asserts that the decision of Bureau of Naval Personnel, on his application for discharge as a conscientious objector has "no basis in fact".

Respondents, on the other hand, contend that there was a "basis in fact" for the Board's refusal to grant petitioner a discharge as a conscientious objector. Respondents also assert that the procedure employed by the Navy was correct and in accordance with the then applicable regulations.

I hold that petitioner (Violi) has a constitutionally guaranteed right to receive

a copy of all documents and reports, and to reply to all allegations contained therein, before his "case file" was forwarded to the Chief of Naval Personnel for their final determination. Thus I find it unnecessary to reach the substantive merits of petitioner's request for a discharge as a conscientious objector, or the refusal thereof by respondents. Accordingly, respondents' motions for dismissal and summary judgement are hereby denied.

## II. BACKGROUND

Petitioner enlisted in the United States Navy on June 24, 1969.[1] Thereafter, on July 22, 1970, petitioner submitted a request for discharge from the Navy as a conscientious objector. Petitioner's application was submitted to his Commanding Officer, respondent Captain Reese, in accordance with the applicable Department of Defense and Navy regulations. At the time his application was submitted, petitioner was stationed at the Naval Air facility, located at Warminster, Pennsylvania.[2] Petitioner, as was his right, waived his right to a hearing before Captain Reese, his Commanding Officer. Thereafter, in accordance with Department of Defense directives (1300.6 (1968)) petitioner was interviewed by a Chaplain, his Commanding Officer, and examined by medical and psychiatric doctors. The report of the Chaplain, the medical doctors, and Commander Reese's recommendation was forwarded to the Bureau of Naval Personnel for their final determination of petitioner's request.

Captain Reese, the Commanding Officer recommended that petitioner's request be granted. Captain Reese's report along with petitioner's "case file" was then forwarded to the Chief of Naval Personnel on July 31, 1970.

On October 12, 1970, the Chief of Naval Personnel, after convening a board of review, denied petitioner's request. The basis of that denial was:

"2. Your request for discharge as a conscientious objector was considered by an appointed board in the Bureau of Naval Personnel. The board doubted the credibility of your claim of conscientious objection and recommended disapproval of your request. Reports of three separate psychiatric interviews indicate dissatisfaction with the Navy. The report of an interview held on 7 May 1970 states that you had conflict with authority and manipulated multiple transfers within the hospital and that some evidence of manipulation was noticed during the interview. The report of another interview conducted on 21 May 1970 indicated that you joined the Navy because you were angry with your parents and 'half drunk.' During the third psychiatric interview you are reported to have said, 'I made up the story of drug abuse to get out of the Navy,' when discussing an earlier medical referral for alleged drug abuse. In view of the above, your request is considered to be another manipulative attempt to be discharged and is not considered to be based on a credible claim of conscientious objection.

3. Accordingly, the recommendation of the board is concurred in and your application for discharge as a conscientious objector is consequently disapproved."

It is apparent from the above statement that the Board premised its decision to deny on the basis of the adverse statements contained in the psychiatric reports, which were a part of petitioner's "case file".

---

1. The facts recited herein are taken, for the most part, from the Enlisted Service Jacket of the Petitioner, Dominic R. Violi. See Gov't. Exh. G–1. The facts herein recited constitute my requisite finding of facts and conclusions of law pursuant to Fed.R.Civ.Pro. 52.

2. Because of the clear threat of transfer to another facility, petitioner filed a motion for a Temporary Restraining Order on November 19, 1971; the matter was argued on November 22, 1971; thereafter respondents were restrained from removing petitioner from the district during the pendency of this action.

Thereafter, on February 2, 1971, petitioner filed a second request for discharge as a conscientious objector. This request was also denied pursuant to DOD directive 1300.6 IV G (1968).[3]

In attacking the board's refusal of his request petitioner asserts two primary grounds; both challenge the procedure employed by the Navy in processing his request. Petitioner's first contention is that the procedure employed lacked the "elementary requirements of due process", that is, the Navy did not afford petitioner access to the contents of his "case file" before it was forwarded to the Chief of Naval Personnel. Secondly, petitioner argues that he was denied due process of law because the Navy failed to follow its own regulations.[4]

■ Respondents, on the other hand, vigorously assert that the procedure followed by the Navy was correct, and that there was a "basis in fact" for their refusal to grant petitioner's request. They rely, *inter alia*, on Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), as authority for their position. The *Estep*, "any basis in fact" standard of judicial review in military matters is, of course, controlling on the substantive merits of petitioner's claim. However, the Supreme Court in *Estep* noted:

*The decisions of local boards made in conformity with the regulations are final even though they may be er-*

*roneous.* p. 122, 66 S.Ct. p. 427 (emphasis added)

Thus, it is clear that a decision of a local board or a military administrative body is valid, so long as, the caveat issued in *Estep,* supra, is complied with, viz., that any decision made by a military agency must be made in "conformity with [its] regulations", in order to be final and valid.[5]

In accordance with their position, respondents have all filed motions for dismissal and summary judgement of petitioner's habeas corpus petition; both motions are hereby denied for reasons which will be set forth hereinafter.

### III

■ This Court is faced with the delicate task of preserving those constitutional rights granted to all Americans by virtue of their citizenship. This same duty and vigilance required to protect individual rights is counterbalanced by the implied necessity of orderly government. This Court must tread ever-so-lightly in matters of military concern. Indeed, in those matters which are necessary to run "its own affairs" this Court does not have jurisdiction, unless the procedure involved therein does not comport with fundamental notions of due process of law. See, Orloff v. Willoughby, 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953).

---

3. It should be noted that all Department of Defense Directives (DOD) are applicable to all branches of the armed services. DOD 1300.6 (II) (1968).

4. Specifically, DOD directive 1300.6, (1968) then in effect when petitioner filed his claim, did *not* expressly require the Navy to grant petitioner access to his "case file" before it was forwarded to the Chief of Naval Personnel, but before petitioner filed his written statement in support of his request. Thereafter, on August 20, 1971, during the pendency of the instant action before this Court, a new DOD 1300.6 IV D(3) (f), was issued which *does* require that an applicant requesting a conscientious objector discharge be given a copy of his "case file" before it is forwarded. This case will be decided on the basis of the 1968 DOD directive and the applicable law then in effect when petitioner requested his discharge. Thus, this Court will not consider the new directive but will confine its determination to the due process requirements then in effect, that is under the former DOD 1300.-6 of 1968.

5. The Estep rule, or standard of review is applicable to all conscientious objector cases. See, Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), discussed infra at pages 466 to 467.

Thus a delicate balance must always be maintained in resolving the legal issue before me. Therefore, I am limiting my inquiry, decision, and holding in this case to the following issue: Whether or not the petitioner, herein, had a constitutional right of access to his entire "case file" and a right to reply to any adverse evidence contained therein, before his "case file" was forwarded to the Chief of Naval Personnel for his final determination of petitioner's request?

The starting point in resolving this issue is the case of Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955). *Gonzales* involved a registrant under the Selective Service System who had sought a conscientious objector exemption from his local board; his claim was denied. Under the statute and procedure then in effect a registrant's claim was referred to the Department of Justice for investigation. The Justice Department would then make a thorough investigation, and submit a report and recommendation to the local board. This recommendation was, in most cases, followed.

In *Gonzales*, as in the instant case, the statute was silent on a registrant's right to a copy of the contents of his file, or more specifically, the statute did not require the Justice Department or the local board to give the registrant a copy of the report and recommendation. The Court, in *Gonzales*, concluded that the statute which required a hearing and afforded the registrant an opportunity to submit a written statement in his behalf to the Appeal Board,

"  .  .  .  implicit[ly] the *Act and Regulations—viewed against our underlying concepts of procedural regularity and basic fair play—[require] that a copy of the recommendation of the Department be furnished the registrant at the time it is forwarded to the Appeal Board, and that he be afforded an opportunity to*

*reply.*"  p. 412, 75 S.Ct. p. 412 (emphasis added).

The italicized rationale of the above holding was that an Appeal Board "is usually the only decision making body to pass on the registrant's entire file." Thus, the Court reasoned it is essential to procedural due process that

"An opportunity for the registrant to reply [to any adverse evidence] is .  .  .  the only means of insuring that [the] Board will have *all* of the relevant data." p. 413, 75 S.Ct. p. 412 (emphasis added)

Thus, in my opinion, *Gonzales* stands for the principle that a Board of Review can only grant a "fair" hearing if it has *all* of the relevant information at its disposal, upon which to base a fair decision.

The adverse evidence referred to in *Gonzales,* by the Court was to the effect that petitioner's claim of conscientious objection was to closely related (in time) to his change in classification from III–A (dependency deferment) to I–A (available for military duty). Thus, the Department recommended that his claim should be denied. Moreover, the Department reasoned that "the fact that [the] registrant became a member of the Jehovah Witnesses sect one month after .  .  .  registration lends weight to this conclusion [that his claim is not sincere or genuine]."[6]  In this regard the Court noted:

"But petitioner contends he was a member of the Witnesses before he registered, and there is testimony that he had not been of the Catholic belief since 1948. Nor was this facet of the case explored at the Department of Justice hearing. *If petitioner had been afforded a copy of the recommendation, he might have successfully contradicted the basis of the Department's conclusion or diminished the forcefulness of its thrust.*" p. 413, 75 S.Ct. p. 413 (emphasis added)

In essence, the principle which *Gonzales* stands for is that a fair determination

6.  Gonzales v. United States, supra, p. 413, 75 S.Ct. p. 413.

of a registrant's file implicitly requires that he know and have an opportunity to confront any adverse evidence contained in his file. This is the minimum required if due process of law is to be more than a meaningless phrase.

The above holding and rationale of *Gonzales,* was most recently followed in Crotty v. Kelly, 443 F.2d 214 (1st Cir. 1971). The petitioner was a member of the New Hampshire National Guard and was summarily ordered to active duty; petitioner sought to evade his call-up order by requesting exemption from military duty on grounds of conscientious objection. His claim was submitted to the Army which denied his request for exemption, and ordered petitioner to report to active duty. Petitioner then sought his release from military service by filing a writ of habeas corpus. The basis of his request for habeas relief was, *inter alia,* that he:

" . . . was denied *access* to these documents until this litigation occurred. He was therefore unable to respond to the negative recommendation and reports.[7] This procedure which denied him access and a chance to respond to the reports, he asserts, violated due process." p. 216 (emphasis added).

In deciding the aforementioned assertion by the petitioner the Court in *Crotty,* applied the holding and rationale of the *Gonzales* case, *in toto,* the Court stated *inter alia:*

"We find much of the analysis [in Gonzales] applicable to petitioner's application. The Conscientious Objector Review Board is the *final decision maker under Department of Defense Directive No. 1300.6,* . . ."

Like the Appeal Board in *Gonzales, the Board was the only decision-making body to pass on the entire file.* It was therefore important that it have *access to all available information* including petitioner's responses to the

unfavorable reports and recommendations . . . " p. 216 (emphasis added).

In Crotty, the unfavorable evidence contained in petitioner's "case file" was that this commanding officer had believed that petitioner's conscientious objector claim was inspired by his immediate call-up status. Accordingly, petitioner's commanding officer recommended that his claim be disapproved. This adverse evidence was in no way disclosed to the petitioner and he, of course, had no opportunity to refute it. The Court of Appeals for the First Circuit held:

"We conclude that this case is controlled by Gonzales and that persons in petitioner's position have a right to a copy of all documents which are forwarded to the Conscientious Objector Review Board, at the time they are forwarded, and the right to an opportunity to reply." p. 217 (emphasis added).

It is relevant to note, at this juncture, that *Gonzales,* involved an out-of-service conscientious objector claim, whereas, in *Crotty,* the claim was an in-service one. This difference was not deemed controlling by the Court in *Crotty,* which stated:

"The Supreme Court in Gonzales was, of course, interpreting a different set of regulations than those before us, but the reasoning of that opinion is nonetheless applicable here. The reasoning of that *opinion was not based upon the intricacies of the particular regulations under scrutiny but was based upon 'underlying concepts of procedural regularity and basic fair play.'* 348 U.S. at 412, 75 S.Ct. at 412. We interpret this language to mean that due process requires the result the Court reached in Gonzales and which we reached in this case." p. 217 (emphasis added).

This rationale of *Crotty* has been confirmed by the recent Supreme Court deci-

---

7. The Court in *Crotty* was construing the same directive now in question, i. e., DOD 1300.6 (1968), which, as previously mentioned, did not require that a copy of the recommendation and reports be given to the claimant.

sion in Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319 (1971). *Ehlert*, involve the question of whether a local selective service board must *reopen* the classification of a registrant who requests an exemption from military duty on grounds of conscientious objection, *after* his notice of induction had been received, but *before* his induction date. The Supreme Court held that a local board was *not* required to reopen a registrant's classification under the aforementioned circumstances. The Court went on to state that one claiming conscientious objector status had the same substantive rights whether "in" or "out" of military service. Thus, the Court reasoned:

"That those whose views are late in crystallizing can be required to wait, however, does not mean they can be deprived of a full and fair opportunity to present the merits of their conscientious objector claims for consideration under the same substantive criteria that must guide the Selective Service System. See Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308." [8] p. 1323 (emphasis added).

In my opinion the instant case is a stronger case than that which was presented in *Gonzales* or *Crotty*, supra.

First, unlike the aforementioned cases, Violi's file was forwarded to the Chief of Naval Personnel by his Commanding Officer with a recommendation of approval. Captain Reese stated, *inter alia*:

"Seaman VIOLI has been given careful consideration to his request and is extremely sincere and honest in the statement of his beliefs. He has been satisfactorily performing his assigned duties since being assigned to his Command and is effectively living his beliefs."

8. This holding in *Ehlert*, was the official policy of the Department of Defense at the time petitioner's claim was initiated: "Since it is in the national interest to judge all claims of conscientious objection by the same standards, whether made before or after entering military service,

This conclusion of Violi's commanding officer (or the reporting officer) was supported by Lt. Mans, a chaplain, who also interviewed Violi and reported:

"Although I do not feel that VIOLI is altogether realistic in his approach to life, I was impressed with the fact that this matter is a weighty struggle for him. I am personally convinced that VIOLI does in fact act against his conscience to remain an active member of the U. S. Navy."

The above recommendations and reports were contradicted by two unfavorable psychiatric reports contained in petitioner's "case file", they follow:

On June 2, 1970, Dr. Glover reported after clinical consultation with Violi that "He [Violi] stated I made up the story of drug abuse to get out of the Navy . . . ." Thereafter, Dr. Block, a psychiatrist, reported after clinical consultation that the "Patient [Violi] feels service should be voluntary . . . (joined U. S. Navy because angry [with his] parents and half drunk." There was also information in petitioner's file which indicated that he had requested frequent job transfers while working in the base hospital. The clear and rational implications of this latter information was that petitioner was attempting to evade his military obligation, because he found military life unsuitable to his personal predilections.

All of this adverse information contained in petitioner's case file was heavily relied upon by the Board in reaching its decision, if not, the sole basis of its decisions. It is obvious, therefore, that fundamental notions of due process require that petitioner first *know* of this adverse evidence, and secondly, that he be given an opportunity to reply thereto.

Selective Service System standards used in determining 1–O or 1–A–O classification of draft registrants prior to induction shall apply to servicemen who claim conscientious objection after entering military service." (DOD 1300.6 IV B(3) (f) 1968).

Thus, I hold that this case is controlled by the cases of Gonzales v. United States and Crotty v. Kelly, supra. Specifically, I hold that Violi had a constitutionally guaranteed right of access to the contents of his "case file", and be afforded an opportunity to reply (in writing) to any adverse evidence contained therein, *before* his "case file" was forwarded to the Chief of Naval Personnel for his final determination.

In light of all of the foregoing the decision of the Chief of Naval Personnel is hereby vacated and this case is remanded to the Chief of Naval Personnel in accordance with the following order.

## ORDER OF REMAND

And now, this 31st day of May, 1972, it is hereby Ordered, Adjudged, and Decreed that:

1. the respondents' motion to dismiss and for summary judgement be, and they are, hereby denied;

2. the decision rendered in this case by the Chief of Naval Personnel, or his designees, is vacated and this case is remanded to the Chief of Naval Personnel, or his authorized designees, for the purpose of reconsidering the request of petitioner *de novo*, and in accordance with the procedure prescribed in Department of Defense Directive 1300.6, dated August 20, 1971;

3. the petitioner, herein shall have fifteen (15) days from the date of receipt of this order by Bureau of Naval Personnel and to reply (in writing) to any adverse evidence contained in his case file; petitioner may direct the Board's attention to any information contained in his case file which he believes was overlooked by the Board, or was not given sufficient weight by the Board;

4. the Chief of Naval Personnel, or his authorized designees, shall consider *de novo* petitioner's request for a discharge as a conscientious objector together with petitioner's reply (in writing) to any adverse evidence contained in his case file. The Chief of Naval Personnel, or his authorized designees, shall render a decision in this case within sixty (60) days from the date of this Order or the writ shall issue, *unless* respondents can show good cause why the said writ should not issue;

5. the jurisdiction be, and it is, retained by this Court, pending completion of the proceedings before the Bureau of Naval Personnel, or its authorized designees.