In the Matter of the Petition on the Behalf of Carol Ann CYWINSKI for a writ of habeas corpus

v.

Colonel Charles W. BINNEY, Commander and Secretary of Defense.

Civ. No. B–80–0062.

United States District Court, D. Maryland.

March 11, 1980.

Philip M. Andrews, John C. Love, and Cameron & Reed, Bel Air, Md., for plaintiff.

Russell T. Baker, Jr., U. S. Atty. for Maryland, Ellen L. Hollander, Asst. U. S. Atty., Baltimore, Md., and Thomas Stanton, Atty. Gen., U. S. Test and Evaluation Command, Aberdeen Proving Ground, Md., for defendant.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

Petitioner, an enlisted member of the United States Army since 1974, seeks to secure her release from service, through a writ of habeas corpus. Her claim is based upon the allegedly improper denial of conscientious objector status. She has exhausted the remedies available to her within the Army and now invokes this court's jurisdiction under 28 U.S.C. § 2241. No hearing is necessary, as the questions before the court present issues of law. 28 U.S.C. § 2243. Local Rule 6. The petitioner asserts (1) that the Army failed to follow its own regulations in reaching a determination adverse to her; (2) that she was denied procedural due process; and (3) that there was no basis in fact for the Army's decision.

 It is well-settled that the District Courts of the United States have jurisdiction to entertain petitions for habeas corpus filed by military personnel seeking discharge by reason of conscientious objection. *Strait v. Laird*, 406 U.S. 341, 346, 92 S.Ct. 1693, 1696, 32 L.Ed.2d 141 (1972). The test to determine whether an individual is entitled to conscientious objector status is the same for persons not yet inducted and persons in the military. There are three essential elements: the person must be opposed to war in any form, his or her opposition must be based upon religious training and belief, and his or her objection must be sincere. *Clay v. United States*, 403 U.S. 698, 700, 91 S.Ct. 2068, 2070, 29 L.Ed.2d 810 (1971).

In recognition of its obligation to honor genuine conscientious objection among mili-

tary personnel, the Army has promulgated Regulation 600–43 under which an inductee might file for conscientious objector status. Pursuant to this regulation, SP–5 Cywinski submitted an application to her immediate superior, Captain Hindman. She was interviewed by Chaplain William J. DeLeo as required by ¶ 2–3, Army Regulation 600–43, who concluded that she was sincere in her beliefs. Petitioner was next interviewed by a psychiatrist, Captain Ronald K. Gray, M. D., as required by ¶ 2–3b, Army Regulation 600–43. Captain Gray found petitioner had no disqualifying mental defects.

Next, as required by ¶ 2–4 of Army Regulation 600–43, Captain Billy F. Vance was appointed investigating officer to conduct an informal investigation under Army Regulation 15–6, *Procedure for Investigating Officers and Boards of Officers.* After a hearing, the transcript of which is before the court, Captain Vance submitted written findings in which he concluded that petitioner should be classified as a conscientious objector. After affording the petitioner a chance for comment or rebuttal, and pursuant to ¶ 2–6 of the regulation, SP–5 Cywinski's application was resubmitted to her commanding officer, Captain Hindman.

Captain Hindman "strongly" recommended disapproval of the application. He found as a fact that she had failed to prove by clear and convincing evidence that she met the three criteria for classification as a conscientious objector. He found specifically that she did not adhere to the tenets of her religious training, that she sought various ways of avoiding military responsibility, particularly in view of her pending assignment to Korea, and that because of discrepancies in her representation of the way in which her objection developed or crystallized, she was not sincere in her beliefs.

Captain Hindman's negative recommendation was forwarded to two officers in SP–5 Cywinski's chain of command, as required by AR 600–43, ¶ 2–6c. Both endorsed Captain Hindman's conclusion. The record was thereupon forwarded to the General Court-Martial Convening Authority for his review in accordance with AR 600–

43, ¶ 2–6c. As required, he referred the case to his staff judge advocate, who reviewed it for legal sufficiency and returned it to the Convening Authority with a proposed disposition. The staff judge advocate also recommended disapproval, based on reasons in the record. The General Court-Martial Convening Authority, acting under AR 600–43, ¶ 2–7c, recommended disapproval.

■ The record, including all recommendations except that of the staff judge advocate, which was omitted for unexplained reasons, was submitted to the petitioner and she was given the opportunity to file a rebuttal, which she did. AR 600–43, ¶ 2–7c(1). Finally, at headquarters, the Army Conscientious Objector Review Board unanimously rejected SP–5 Cywinski's petition. The board found that she had failed to articulate clearly the basis for her objection, whether religious or moral, and that she had not proven the sincerity of her beliefs by clear and convincing evidence. This petition followed. The petitioner asserts that the Army failed to follow two of its own regulations, to her prejudice, and that its negative determination was vitiated thereby. She asserts first that the Army violated AR 600–43, ¶ 2–1b in that the approving authority did not render his final determination until 129 days after the application was filed. The regulation provides:

Although the nature of an application for conscientious objector status does not lend itself to fixed scheduling, generally it is expected that in the case of active duty personnel in normal troop unit or garrison configurations, processing from the date of submission to action by the approving authority should require, under normal conditions, less than 3 months. Extraordinary circumstances . . . may lengthen this period. If processing time of an application from such personnel exceeds 90 days, or in any other case exceeds 180 days, the reasons will be stated for the record.

AR 600–43, ¶ 2–1b. The defendant concedes that processing Cywinski's application took over 90 days and that no statement of

reasons appears on the record. This court does not find, however, that this violation was such as to taint the entire proceeding. Nothing in the regulation indicates that the expected time limitation is required by the Constitution or by federal statute, and there is no suggestion that the violation of the regulation deprived the petitioner of any constitutional right. It follows, under the reasoning of *United States v. Caceres*, 440 U.S. 741, 751–52, 99 S.Ct. 1465, 1471–1472, 59 L.Ed.2d 733 (1979), that violation of this regulation without more does not entitle the petitioner to the relief she seeks.

■ SP–5 Cywinski also asserts that the Army deprived her of procedural due process of law in that it failed to provide her with a copy of the staff judge advocate's recommendation[1] when it submitted the whole record for her review and rebuttal pursuant to AR 600–43, ¶ 2–7c. The applicable regulation does not require that the entire record be submitted to the applicant for rebuttal, only that

> [t]he authority [who recommends disapproval] will furnish the applicant a copy of the disapproval recommendation and the reasons in support thereof.

Nevertheless, the petitioner's argument is not based so much on a perceived regulatory irregularity as on a constitutional one. She asserts that she was denied the opportunity "to review and rebut the information" contained in the staff judge advocate's report, and that such denial constituted a deprivation of due process, under *Gonzales v. United States*, 348 U.S. 407, 412, 75 S.Ct. 409, 412, 99 L.Ed. 467 (1955). In *Gonzales*, the Court held that a person who was denied conscientious objector status was entitled as a matter of procedural due process to receive a copy of the recommendation made by the Department of Justice to the Selective Service Appeal Board, upon which the Appeal Board based its denial. Similarly, in *Crotty v. Kelly*, 443 F.2d 214, 217 (1st Cir. 1971), the First Circuit held that one already inducted into the military has "a right to a copy of all documents which are forwarded to the Conscientious Objector Review Board, at the time they are forwarded, and the right to an opportunity to reply."

■ The question presented in this case is whether failure of the defendant to supply the staff judge advocate's recommendation amounted to a deprivation of due process. This court holds that it did not.[2] The document at issue presented no new facts or information in support of its recommendation. It simply summarized reasons stated elsewhere in the record and characterized these as being "sufficient in law and fact" to support the recommended denial. The failure to supply this document is thus distinguishable from the defendants' failures in *Gonzales* and *Crotty, supra*. In *Gonzales*, the petitioner was given no opportunity to review and refute an FBI investigative report which contained substantial factual allegations. In *Crotty*, the would-be objector not only did not receive the staff judge advocate's report, but also was not furnished the reports of the chaplain, psychiatrist or hearing officer.

This case is much more similar to *Cole v. Clements*, 494 F.2d 141, 144 (10th Cir. 1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 819 (1975), in which the court held that where the petitioner was given copies of every piece of evidence in the record except the staff judge advocate's recommendation, and the recommendation contained no evidence or factual assertions, there was no denial of due process. This court concludes that the Army's failure to give Cywinski a copy of the staff judge advocate's report does not constitute a deprivation of procedural due process.

■ Finally, Cywinski challenges the substance of the Army's denial of her conscientious objector status. The parties

---

1. Attached as Exhibit 1.

2. Even if it did, the remedy would not be to order the petitioner's immediate discharge but to allow her to resubmit her rebuttal after having had an opportunity to read and respond to the document at issue. *See Crotty v. Kelly, supra*, 443 F.2d at 217; *United States ex rel. Coates v. Laird*, 494 F.2d 709, 712 (4th Cir. 1974).

agree that the appropriate standard by which courts are to judge post-induction decisions concerning conscientious objection is whether there is "any basis in fact" for the Army's determination. *See United States ex rel. Brooks v. Clifford,* 409 F.2d 700, 705 (4th Cir. 1969).[3] Under this standard, and even under a broader scope of review, it is clear to this court that the Army's decision to deny SP–5 Cywinski conscientious objector status is well-founded.

The principal point of contention is the sincerity of her beliefs. This is necessarily a difficult thing to ascertain. Cywinski contends that she is sincere in her objection to war in any form and that her objection is the product of religious training and belief. She urges the court to note that those who interviewed her personally, that is, Captain Billy Vance, the Investigating Officer, and Chaplain DeLeo, both found her sincere.

The defendant points to the following bases in fact to support the finding that Cywinski is not sincere in her objection: there were discrepancies in her account of how and when her beliefs crystallized; she was aware that she was to be reassigned to Korea; she sought a medical discharge prior to seeking conscientious objector classification; and that at a psychiatric examination conducted in connection with her seeking medical discharge, she evidenced no reluctance to serve based on conscientious objection. Thus, the Army concluded that Cywinski had failed to prove her entitlement to discharge by clear and convincing evidence.

The supposed inconsistencies are as follows: Apparently Cywinski joined the Army when she married a soldier. She looked upon her military career as "only a job" (Transcript of Hearing before Capt. Vance at 25, line 17) and, according to her, she stayed in and reenlisted in February 1978 because of her husband. She allegedly became disenchanted with him when he took up hunting in late 1978, and disenchanted with the military some time later. She says her beliefs crystallized in April or May 1979, but points to an event in June involving a pregnant soldier which triggered her "realization" that the Army manifested gross insensitivity to human life. In a psychiatric evaluation dated May 25, 1979, Dr. Weinstein observed depression and "changed motivation" as a result of the breakup of Cywinski's marriage and her perceived lack of support from the Army. But nowhere did the doctor suggest that she entertained or expressed beliefs consistent with conscientious objection.

Other factors which suggested a lack of sincerity to the Army were that SP–5 Cywinski did not attend church, although she had been raised as a Roman Catholic, that right before seeking conscientious objector status she sought a medical discharge for being underweight, and that in all likelihood she was aware that she was to be sent to Korea. While none of these alone would be sufficient to support the Army's decision, these factors taken together with the unsatisfactory picture of when and how petitioner's beliefs crystallized do provide a sufficient basis in fact for denying her conscientious objector status.

Petitioner urges the court to note that each officer who interviewed her personally

---

3. This court would observe that notwithstanding many courts' adoption of the "no basis in fact" standard for review of post-induction decisions, this standard may not be appropriate. The Supreme Court first announced this narrow scope of review in *Estep v. United States,* 327 U.S. 114, 122, 66 S.Ct. 423, 427, 90 L.Ed. 567 (1946), which was a Selective Service case. *See also Witmer v. United States,* 348 U.S. 375, 380 -81, 75 S.Ct. 392, 395, 99 L.Ed. 428 (1955). The "no basis in fact" standard was established in *Estep* because of Congress' express determination that decisions by local draft boards be "final." *Estep, supra* 327 U.S. at 122, 66 S.Ct. at 427. No comparable legislative determination obtains for decisions made within the military. Stated otherwise, the military regulation governing conscientious objector applications, AR 600–43, is not a law enacted by Congress, and decisions made pursuant thereto are not stamped with finality and shielded from all but the narrowest judicial review. Thus it appears to this court that a broader standard of review should apply to military decisions. Nevertheless, in this case the result is the same whether the Army's decision is judged by the "basis in fact" test or by some broader standard, whether "substantial evidence," "arbitrary and capricious" or "rational basis."

found her to be sincere. *Cf. United States ex rel. Brooks v. Clifford,* 409 F.2d 700, 705 (4th Cir. 1969). While this fact is not insignificant, one of these officers, Captain Vance, observed (correctly, in this court's view) that Cywinski's opposition to war was "eloquently and convincingly stated *in word*; however, it does not manifest itself clearly *in deed.*" *Compare, e. g. United States ex rel. Tobias v. Laird,* 413 F.2d 936, 939 (4th Cir. 1969), and *United States ex rel. Brooks v. Clifford,* 409 F.2d 700, 701–02 (4th Cir. 1969), in which both petitioners manifested early and consistently the sincerity of their beliefs. This is not a case in which the would-be objector had long behaved in a manner consistent with his professed convictions. On the contrary, the record reveals that until the time of her marital crisis, Cywinski had been a willing, cheerful, and well-motivated soldier, with no particular history of religious, pacifist, or even socially-motivated activity.

The petitioner challenges the specific facts alluded to by the Army in support of its finding that she is not sincere. She argues that any discrepancies appearing in her account of how her beliefs crystallized are because of the imprecise nature of "crystallization," *see Moore v. Connell,* 318 F.Supp. 884, 890 (D.Md.1970), and cases quoted therein, and not because she is insincere. She also maintains that her feelings are "religious" in nature although she does not attend church regularly and that she had no sure knowledge of her reassignment to Korea prior to August 1979, although she admits she was approached about it as early as April. (Transcript of Hearing before Capt. Vance at 38, line 1).

This court has considered her arguments carefully, but finds and concludes upon review of the entire record that there is not only a basis in fact but even substantial evidence to support the Army's decision not to reclassify SP–5 Cywinski as a conscientious objector. Although she is doubtless sincere in her desire to get out of the Army, the sincerity of her objection to the bearing of arms is open to doubt.

Accordingly, it is this 11th day of March, 1980, by the United States District Court for the District of Maryland,

ORDERED that the petition for writ of habeas corpus be, and the same hereby, is DENIED.

## EXHIBIT 1

DRSTE–LO (23 Oct 79)
SUBJECT: Request for Discharge UP AR 600–43

TO Dir, PT&FD FROM Legal Office DATE 1 Nov 79 CMT 2
 ATTN: DRSTE-PT-ME TECOM Mr. Stanton/gjs/4959

1. The request for discharge has been reviewed pursuant to para 2–6c, AR 600–43.

2. It is recommended that the request not be approved. SP5 Cywinski has not shown by clear and convincing evidence that she is sincere in her request (para 1–4c, AR 600–43).

3. The evidence indicates that SP5 Cywinski has had problems since the fall of 1978. However, they appear to be based on a general discontent with the Army rather than on grounds of conscientious objection. SP5 Cywinski has sought discharge by other means and did not apply for conscientious objector status until other discharge procedures had failed. CPT Hindman's letter with inclosures provides sufficient evidence to support his recommendation of non-approval. COL Binney further expounds on these reasons. Two documents are of particular importance.

 a. In Exhibit 4 to DA Form 1574, a letter dated 27 May 1979, Dr. Weinstein provides a psychiatric evaluation of SP5 Cywinski. Dr. Weinstein stated that SP5 Cywinski is depressed and that her attitude towards the Army has changed; however, there is no discussion of SP5 Cywinski's conscientious objector beliefs. This examination occurred on 25 May 1979 by which time SP5 Cywinski states that she had developed her beliefs. It is unusual that this subject was not discussed and tends to show that SP5 Cywinski's did not have fixed beliefs at this time.

b. CPT Ronald Gray, M.D. performed a Report of Mental Status Evaluation on SP5 Cywinski on 5 June 1979 (Incl 3 to CPT Hindman's letter of 21 Sep 79). In his remarks, CPT Gray stated that SP5 Cywinski's main problem was that she wanted out of the Army. There was no discussion of her conscientious objection to military service. Again this examination occurred after the date SP5 Cywinski states she developed her beliefs.

4. The case is sufficient in law and fact to support the recommendations of CPT Hindman, MAJ Allen and COL Binney.

1 Incl
nc

ROBERT E. COHEN
LTC, JAGC
Chief Counsel