**James A. NIMMO**

v.

**D. W. SIMPSON, Superintendent, et al.**

**Civ. A. No. 163–73–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Jan. 24, 1974.

James A. Nimmo, pro se.

Burnett Miller, III, Asst. Atty. Gen. of Va., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, a Virginia prisoner, seeks injunctive relief invalidating a change in his security status allegedly resulting from a constitutionally defective hearing before the Institutional Classification Committee (I.C.C.) on July 27, 1973.[1] Jurisdiction is attained pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343. The case is presently before the Court on defendant's motion for summary judgment and plaintiff's amended response thereto. Upon the material before it, the Court deems the matter ripe for disposition.

This action was originally brought to challenge the constitutionality of, among other things, an I.C.C. hearing on March 3, 1973, which resulted in petitioner's being placed in isolation. By order of July 19, 1973, this Court upheld that challenge and directed that plaintiff be afforded a rehearing before the I.C.C., conducted in accordance with the principles stated in the memorandum of that date. Nimmo now challenges the proceedings held pursuant to that order.

Plaintiff grounds his claims of constitutional deficiency on the following allegations:

1. That written statements of informants themselves were not introduced as evidence, and that paraphrasing of prisoner complaints against Nimmo was allowed to be presented by the officials allegedly receiving the derogatory information.

2. That the Chairman of the Classification Committee which reheard plaintiff's case was the brother of one of the officers who testified for the purpose of relaying informants' charges and that both of the officers relaying complaints had sat on the Classification Committee which was the subject of plaintiff's initial complaint, and the decision of which was set aside.

3. That the character and political beliefs of plaintiff and plaintiff's witnesses were inquired into by the Committee.

These claims will be treated seriatim.

In ordering a rehearing for Nimmo, this Court noted that the opportunity to cross-examine one's accuser, required in the punitive context of Adjustment Committee hearings, is not constitutionally mandated in the preventative context of Classification Committee decisions. Nimmo v. Simpson, C.A. 163–73–R (E.D.Va., July 19, 1973). However, since a loss of privileges may be suffered as the result of an I.C.C. increase in security, a hearing is required at which an inmate may "present his defense" to whatever information or accusations might have prompted the review of his security status. Landman v. Royster, 354 F.Supp. 1292 (E.D.Va. 1973). Such an opportunity, of course, is meaningless absent some awareness on the inmate's part of the charges which he must rebut. Cf. Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955). Thus, in its earlier order, this Court held that although confidential sources providing information upon which a security status review is based need not be revealed, "when a hearing is called because of confidential complaints about the inmate's behavior, he is entitled to know the nature of those complaints, though not their individual source. In such a situation, the Court is satisfied that it would suffice to inform the prisoner which guard received the information and the nature of the information. Though when presented in this manner the charges are technically 'hearsay,' the prisoner would at least be informed of the same with sufficient specificity to rebut them." Nimmo, supra, at 6. Thus the use of officers as relays of in-

---

1. Plaintiff also seeks the purging of all records relating to this hearing, and monetary damages.

formation given them has been specifically approved. Neither informants themselves nor their written statements need be produced.[2] While fabrication by officers of purported "informants'" information is possible, that danger does not outweigh the burden upon those charged with maintenance of prison security which would result from denying them the flexibility to make decisions on the basis of oral confidential information. This Court must start with a presumption of good faith on the part of prison officials. Furthermore, it can only be in the interest of the fair and efficient operation of the state prison system for the state to deal sternly with any of its agents found to abuse the trust necessarily imposed in them.[3] Under the circumstances, the Court finds that the procedural safeguards which plaintiff seeks, direct testimony or written statements of informants, are neither practically available nor constitutionally required.

 The essence of plaintiff's claim, however, extends beyond his specific demand for written statements by informers and amounts to a general attack on the procedural scheme governing the type of hearing in which he was involved. As discussed above, the balance between official and inmate interests tilts generally in the I.C.C. context in favor of the prison administration. But, particularly in cases of this genre, where the mechanisms available to the prisoner himself to ascertain the verity of officers' statements concerning informants' reports are severely restricted, greater importance adheres to those procedural safeguards which can act as a control on the truth of testimony and which can be administered with a minimum of prejudice to prison security. Such an element of due process is the requirement that the guards, testifying to transmit that which was allegedly told to them by others, be sworn. The positive effects of the swearing process arise not only from the threat of legal penalties for the making of knowingly false statements under oath, but also from the solemn and obligatory nature of the ritual itself. The administering of the oath serves to impress upon the witness and all concerned the seriousness with which society views the testimony being taken, and the effectiveness of the oath as a control upon the truthfulness of the testimony, although not mechanically calculable, cannot be considered insubstantial.

The Court has examined the taped record of plaintiff's I.C.C. rehearing submitted by defendants in support of their motion for summary judgment. That tape contains nothing to indicate that the testimony taken from the guards was taken under oath. Since examination of the tape, which was turned off during the entrance and exit of witnesses, is not necessarily conclusive evidence on this point and since defendants have not had previous occasion to address this issue, the defendants shall be allowed to submit, within seven (7) days, whatever material, including curative affidavits, on this question which they may deem appropriate.

2. It is not unlikely that persons fearing to appear in person before the Committee might also be afraid to sign written statements incorporating their information. These same persons, however, might nonetheless be willing to make oral statements to guards whom they have taken into their confidence. The Constitution does not deprive the I.C.C. of the opportunity to make use of information so obtained.

3. In our judicial system, problems of the nature now raised by plaintiff are ordinarily handled through cross-examination. The opportunity to cross-examine is preferred even in the I.C.C. context. See Wesson v. Moore, 365 F.Supp. 1262 (E.D.Va., 1973). However, in cases where officers are relaying confidential information, full scale cross-examination of such officers is inappropriate. Here precisely those questions which might provoke answers exposing fabrication were it to exist, are likely also to provide information which would lead to the discovery of an informant's identity were the officer in fact to be serving merely as a conduit. What questions will be allowed must be left in the sound discretion of the Committee, and in this narrow set of cases, plaintiff is relegated in large part to his own affirmative explanations or rebuttals of the charges against him.

Nimmo next alleges that he was denied due process because the Chairman of his Classification Committee, G. L. Simpson, was the brother of one of the prison officials relaying informants' reports and was the "Notary Public and friend" of Mr. Hardy who was a co-defendant in plaintiff's initial complaint. By affidavit submitted in support of defendants' motion for summary judgment, G. L. Simpson avers that plaintiff's Classification Committee "was composed of individuals from three different units in an effort to insure that petitioner received a fair hearing before the Committee." He further asserts that the decision of the Committee was based solely on the testimony taken at the hearing.

 There has been no proffer of evidence by the plaintiff that G. L. Simpson's relationships or friendships with persons involved with this case in fact influenced the Committee decision. Since there was clearly sufficient objective evidence upon which the Committee could legitimately reach its conclusion, the possibility of the encroachment of subjective factors arising from the conflict of interest attributed to one member of the Committee is not sufficient to overturn its decision. While the result might well be different in the punitive Adjustment Committee context, it must be reiterated that a Classification Committee hearing is not a criminal trial. It is necessarily a rough and imperfect enterprise which except for truly minimal safeguards such as the right to appear and defend is left in the hands of the state. Were there direct evidence of impropriety, due process, even in this context, would be violated. The mere possibility of conflict of interest is not, however, in hearings before the I.C.C. sufficient to invalidate Committee action.[4]

 The precise nature of plaintiff's objection to guards testifying at his hearing who sat on the Committee whose finding was previously invalidated is not clear. However, to the extent that the complaint goes to the credibility of these witnesses, it does not raise an issue of the magnitude of constitutional deprivation and shall be dismissed.

 Plaintiff's final contention is that his political beliefs and those of his witnesses were inquired into by the Committee. The thrust of this claim appears to be an assertion that plaintiff was in fact punished for his political beliefs rather than for any reason relating to prison security and that the Committee's decision is therefore constitutionally invalid. Plaintiff alleges that the "political" questioning of which he complains is not reflected in the record of his hearing since the tape recorder used was turned off by the Chairman of the Committee during periods of such questioning. While some questioning relating to "political" activity may have relevance to prison security classification, punitive prison action on the basis of pure political belief is constitutionally prohibited.

In support of their motion for summary judgment, defendants have submitted the affidavit of G. L. Simpson stating that all testimony of witnesses and all questioning by Committee members was included on the tape. In his amended rebuttal, plaintiff asserts that he is prepared to produce counter-affidavits from the witnesses who testified in his behalf at the hearing, but has been prevented from doing so by prison rules prohibiting correspondence among inmates. In order that the Court may better assess the questions raised with regard to the above allegations and circumstances, the plaintiff shall be ordered to inform the Court within seven (7) days (a) of what attempts he has made to communicate with his witnesses on the question of supplying affidavits and with the nature of any institutional rebuffs or barriers

---

4. Although plaintiff's claim in this regard is insufficient to support action by this Court, the Court nonetheless feels compelled to comment that the "effort" on the part of prison authorities "to insure that petitioner received a fair hearing," appears, in light of the above circumstance in a case of this nature, something less than herculean.

he has encountered, and (b) of the precise nature of the "political" questioning which is alleged to have occurred.

For the reasons stated above, defendants' motion for summary judgment shall be granted as to all issues except those relating to the swearing of witnesses and the alleged "political" questioning. With regard to the latter issues, defendants and plaintiff shall be directed to respond as indicated above.

An appropriate order shall issue.