William Douglas DAVENPORT

v.

James F. HOWARD et al.

Civ. A. No. 73-657-R.

United States District Court,
E. D. Virginia,
Richmond Division.

Nov. 20, 1974.

———◆———

William Douglas Davenport, pro se.

James W. Hooper, Asst. Atty. Gen., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, a Virginia prisoner, seeks declaratory, injunctive and monetary relief under 42 U.S.C. § 1983 from alleged deprivations of his constitutionally protected rights by the defendant penal authorities. Jurisdiction of the Court is attained pursuant to 28 U.S.C. §§ 1343, 2201 and 2202. The parties are presently before the Court on defendants' motion for summary judgment, to which plaintiff has responded. Upon the material before it, the Court deems the motion ready for disposition.

Plaintiff alleges that on October 30, 1973, he was transferred from Field Unit #17 to the isolation section of Field Unit #2 for a period of fifteen days, following which he was transferred to the maximum security section of the State Penitentiary and placed on padlock status. Plaintiff contends that he has never been apprised of the charges against him nor has he ever appeared before either the Institutional Classification or Institutional Adjustment Committees for the disposition of charges which might have been lodged.

The defendants, in support of their motion for summary judgment, have submitted verified affidavits and prison reports attesting to the following facts: On June 14, 1973, the Institutional Classification Committee (ICC) of the Virginia State Penitentiary interviewed the plaintiff in C-cell to determine his continued custody status. At that time, plaintiff was being held in C-cell pending disposition of a felony charge against him. At the hearing, plaintiff allegedly told the ICC that he had been found not guilty of the felony charge on June 11, 1973. Thereafter, the ICC recommended that plaintiff be transferred from C-cell to the general prison population and subsequently to a field unit. Defendants allege that plaintiff was then told that he would be on probation for a period of six months and that if he violated an institutional rule during the probationary period he would be subject to return to C-cell.

Defendants further contend that on July 27, 1973 plaintiff was transferred to the Haynesville Correctional Unit where, on October 26, 1973, an inmate disturbance occurred. Following the disturbance another inmate submitted a written statement to the Unit Superintendent that plaintiff was its principal cause. On October 27, 1973, plaintiff was charged with violation of the institutional rule of abusive and vulgar language for cursing a guard. On October 28, 1973, plaintiff was charged with violation of the institutional rule of threatening bodily harm to three unit guards. Defendants allege that plaintiff was advised of the charges against him, as well as his rights to retain counsel or to utilize an inmate advisor, and that plaintiff refused to cooperate or sign the Adjustment Committee action report.

The defendants state that plaintiff was given a hearing before the Unit Adjustment Committee on October 30, 1973, but that plaintiff refused to participate in the proceedings and walked out, despite the Committee's warning that he would be tried *in absentia* if he left the room. Following plaintiff's departure, the Committee continued the hearing and determined that plaintiff was guilty of violating institutional rules. On the charge of abusive language, plaintiff was sentenced to fifteen days in confinement, while on the charge of threatening bodily harm, the Committee recommended that thirty days good conduct time be withdrawn. The Adjustment Committee also recommended that plaintiff be sent before the ICC for a review of his security status.

Defendants further allege that after plaintiff walked out of the Adjustment Committee hearing, the Unit Superintendent, fearing plaintiff would create another disturbance, directed that he be placed in the back of a panel truck

parked outside the Unit to await the Adjustment Committee's decision. Defendants contend that upon completion of the hearing, plaintiff was approached with the Committee report for the purpose of obtaining his signature, but plaintiff refused to sign. Thereafter, plaintiff was transferred to Unit #2 to serve his fifteen day sentence since the isolation cells at the Haynesville Unit were occupied.

Defendants also state that the Haynesville Unit Classification Committee met on October 30, 1973 to determine the proper custody status for plaintiff and that, based upon the Adjustment Committee reports and recommendation, the UCC recommended plaintiff be assigned to C-cell at the penitentiary upon completion of his isolation sentence. Defendants allege that on November 14, 1973, plaintiff was transferred to C-cell and was interviewed by the Penitentiary ICC, at which time plaintiff was present during the entire hearing. The ICC allegedly discussed plaintiff's record at the Haynesville Unit and observed that he had been convicted of violating institutional rules on several occasions. Based upon the fact that plaintiff had previously been placed on probation, that he had violated institutional rules since his release from C-cell, that his brother was currently in the general inmate population and that plaintiff had exhibited adjustment problems in the past, the ICC recommended plaintiff be assigned to C-cell.

Finally, defendants state that the Penitentiary ICC interviewed plaintiff on January 4, 1974 as a part of a periodic review of his custody status and that the Committee, after noting plaintiff's favorable adjustment while in C-cell, recommended that he be released from padlock status but that he remain in the C-cell population for the present time.

In response to defendants' motion for summary judgment, plaintiff once again denies ever receiving an Adjustment Committee or ICC hearing before his incarceration in C-cell and states that he did not commit nor was he ever charged with the alleged offenses and that he never received a copy of the charges filed against him.

■ The law is now clear that to satisfy the minimum requirements of procedural due process, within the setting of a prison disciplinary proceeding, a disciplinary action defendant must be provided: (1) advance written notice of the claimed violation not less than twenty-four hours prior to hearing; (2) a written statement of the fact-findings as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. *Wolff* v. *McDonald*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).[1]

■ Furthermore, this Court has noted that because an inmate will suffer lost privileges, an increase in his security classification mandates a prior hearing by the ICC at which time the inmate may appear to present his defenses. *Nimmo* v. *Simpson*, 370 F.Supp. 103 (E.D.Va.1973). In order for an inmate to make a proper showing of a constitutional deprivation with regard to an ICC

---

1. Although the issue raised in *Wolff* was the procedures employed with respect to the deprivation of "good time" under the Nebraska system, the Supreme Court noted that the same procedures were employed where disciplinary confinement is imposed. Moreover, the Court stated that:

   This appears a realistic approach, for it would be difficult for the purposes of procedural due process to distinguish between the procedures that are required where good-time is forfeited and those that must be extended when solitary confinement is at issue. 418 U.S. at 571, 94 S.Ct. at 2982.

The Court must, therefore, conclude that the procedural requirements set out in *Wolff* are applicable to the instant plaintiff's claim concerning Adjustment Committee proceedings.

determination, however, he must show that the ICC action was arbitrary or capricious or that it was disguised as a form of punishment. *Ferrell* v. *Huffman*, 350 F.Supp. 164, 166 (E.D.Va. 1972).

While plaintiff alleges that the Adjustment Committee and ICC proceedings which resulted in administrative punishment and reclassification were totally devoid of due process, the Court finds plaintiff's claims lacking in merit. In reaching this conclusion, the Court relies not on defendants' allegations, but rather on contemporaneous prison records kept in the ordinary course of business. See *Harper* v. *Royster*, No. 15,055 (4th Cir. Sept. 10, 1971). Based upon those records, the Court finds an attempt was made to provide plaintiff with written notice of the charges against him and factfindings as to the evidence upon which the Adjustment Committee relied in reaching its determination, and that plaintiff was given an opportunity to call witnesses and present evidence in his defense. Moreover, the Court finds that plaintiff was present at the ICC hearing which resulted in an increase in his security status and, based upon plaintiff's record of administrative infractions, that the ICC's determination was reasonable and was, therefore, neither arbitrary nor punitive. While it is apparent to the Court that plaintiff refused to take part in these proceedings, he cannot be permitted to rely on his lack of cooperation as a basis for his claims.

Since the Court has given plaintiff an opportunity to submit evidence to rebut the prison records tendered by defendants and since plaintiff has failed to avail himself of that opportunity, the facts contained in defendants' exhibits stand established for purposes of their motion for summary judgment. Finding there is no genuine issue as to a material fact and that plaintiff has not shown a violation of his constitutionally protected rights, the Court will enter an order granting defendants' motion for summary judgment and dismissing the complaint.

## ORDER

In accordance with the memorandum of the Court this day filed, and deeming it just and proper so to do, it is ADJUDGED and ORDERED that defendant's motion for summary judgment be, and the same is hereby, granted and that judgment be entered for the defendant.

Let the Clerk send copies of the memorandum and this order to the plaintiff and to the Attorney General of Virginia.